HIGGINS *against* EMMONS and another.

Where a party contracts to deliver certain cumbrous chattels *on demand*, the legal construction of the contract is, that a *reasonable* demand is to be made ; and any facts which shew a demand to have been reasonable, prove, necessarily, that it was made at the proper place.

Where a party is under an obligation to deliver goods on demand, his silence, upon a reasonable demand being made, is equivalent to a refusal to deliver the goods.

This was an action on a receipt, given by the defendants, to the plaintiff, for 20 tons of hay, 4 cows, 3 yoke of oxen, 3 horses and 30 cords of wood, previously attached, by the plaintiff, as a deputy-sheriff, in a suit brought by one *Bigelow* against the defendant *Emmons* ; which property, the defendants, by the terms of the receipt, promised to safely keep, and redeliver to the plaintiff, on demand. The declaration averred, that at *East-Haddam*, on the 17th of *May*, 1820, the plaintiff, with the execution issued in said suit, made demand of the defendants of the property mentioned in the receipt, for the purpose of posting and selling it, as the law directs ; but the defendants

refused and neglected to deliver said property, or any part thereof.

The cause was tried at *Middletown, February* term, 1822, before *Brainard,* J.

The plaintiff proved, that during the life of the execution, and while it was in his hands for collection, he demanded of *Emmons,* at the store of *Jehiel Annable,* in *East-Haddam,* about four miles from the dwelling-house of *Emmons,* where he happened to be on occasional business, the property mentioned in the receipt; that to this demand *Emmons* made no answer, and took no notice of it, and did not deliver, or offer to deliver, the property; that afterwards, during the life of the execution, the plaintiff demanded the property of *Olmsted,* the other defendant, at the dwelling-house of one *Stranahan,* in *East-Haddam,* about one mile from *Emmons's;* and that to this demand *Olmsted* made no reply; nor did he deliver, or offer to deliver the property. It was admitted, that no part of the property was at either of the places where the demand was so made. The defendant insisted, that the demand proved was insufficient to support the declaration, and prayed the judge so to instruct the jury. The judge accordingly instructed the jury, that the demand was insufficient;—that it ought to have been made at *Emmons'* house; and that, therefore, the verdict ought to be for the defendants.

The jury returned a verdict for the defendants; and the plaintiff moved for a new trial for a mis-direction.

*Daggett,* in support of the motion, contended, 1. That there was nothing in the contract, or in the nature of the case, to shew, that a demand at the dwelling-house of *Emmons,* was necessary. The receipt specified no place of delivery or of demand. The property in question was of a kind the most unfavourable to such a conclusion. Hay and wood in large quantities, cattle and horses, are not usually kept about a man's person, or in his house.

2. That if there be nothing in the contract, or in the special circumstances of the case, to limit the demand, it may be made of the party bound to deliver, wherever he may be, provided the party making the demand *act reasonably.* If *A.* demand of *B.* property at a place where such property is not, and *B.* offers to deliver it to *A.* at the place where it is, it will be the duty of *A.* to repair to such place to receive it; but *B.* cannot except to the regularity or sufficiency of the demand. *Scott v. Crane,* 1 *Conn. Rep.* 255. 259.

*Middlesex,*
July,
1823.

Higgins
*v.*
Emmons.

3. That the conduct of the defendants was equivalent to a *refusal* to deliver the property. When the demand was made, the defendants were obliged to deliver the property, or to state a substantial reason for not delivering it. The neglect of a person to do an act, which he is under an obligation to do, is equivalent to a refusal. See *Scott* v. *Crane*, before referred to.

*Staples* and *Hungerford*, contra, contended, 1. That as by the terms of the receipt, the property was to be delivered "on demand;" a demand was a condition precedent to the plaintiff's right of recovery, which he was bound to shew that he had strictly complied with. This essential part of his case it was incumbent on him to make out, by positive testimony; and until he had done this, the defendants had a right to fold their arms in silence.

2. That the plaintiff was bound to make the demand where he had a right to exact the delivery. The defendants were clearly not obliged to deliver the property in question at *Annable's* store, four miles off. They were not obliged to carry about with them the hay, the cattle, the horses and the wood mentioned in the receipt. They were bailees without reward,— mere depositaries. *Mason* v. *Briggs*, 16 *Mass. Rep.* 453. 6 *Bac. Abr.* 451. (*Wils.* ed.)

3. That there was no *waiver*, by the defendants, of a demand, at the proper place. Silence is no waiver of any right or privilege. *Swift* v. *Chamberlain*, 3 *Conn. Rep.* 537.

Hosmer, Ch. J. The only question before the court, relates to the sufficiency of the plaintiff's demand. The cases which determine the place of delivery, have no relevancy to the place of demand; for the demand need not, of necessity, be made at the place, where the goods and chattels must be received. If the defendants had declared, that the articles were destroyed, or if they had refused to deliver them, no one would doubt, that the demand was sufficient.

The defendants having engaged to deliver the property in question on demand, it is the legal construction of the contract, that a reasonable demand must be made; and any facts, which show the demand to have been reasonable, must prove, necessarily, that it was made at the proper place. The only difficulty in the case has arisen, from confounding the place of delivery, with that of demand; but these are not, of course, coincident. Had the defendants said, "we will not deliver the

goods," their contract would have been broken, because a reasonable request for their delivery had been made. I consider the defendants as having been subjected to the obligation of speaking, by the demand of the officer, and that their silence was equivalent to a refusal of the delivery of the goods. Their intention may rationally be inferred from the circumstances appearing in the case ; and it is inconsistent not merely with civility, but with the obligation reasonably existing on them, to construe their *expressive silence*, as having no meaning. The silence maintained, in *Swift* v. *Chamberlain*, 3 *Conn. Rep.* 537, where no question was asked, no obligation of disclosure existed, and the fact itself, for aught that appears, was entirely accidental, was of a different character, and laid no foundation of inference against the person omitting to speak. If the defendants had said to *Higgins*, " the property is ready to be delivered ; come with us and receive it ;" he must have gone with them to the house of *Emmons*, or to any other place in *East-Haddam*, where the property was. But, a silence continued in defiance of an obligation to speak, and for no just and reasonable purpose, ought not to benefit the defendants. The demand was fairly made, and should have been frankly answered.

The case of *Mason* v. *Briggs*, 16 *Mass. Rep.* 453. did not determine, that a demand made at a place, at some distance from the property to be delivered, was invalid ; but it affirmatively decided, that a demand at the party's dwelling-house, in his absence, was sufficient. This principle has no relevancy to the case before the court.

The determination of the court in *Scott* v. *Crane*, 1 *Conn. Rep.* 255. is very apposite to the case under discussion. A demand was made at *New-Haven*, of goods, which had been attached at *Oxford*, and which probably were believed to be at the latter place. At the time of the demand, the defendant declared, that he had given up the goods in question, to *Zerah Hawley* and *Lewis Hotchkiss*, and taken their receipt for them. The court was of opinion, that a legal demand had been made, and that a refusal to deliver the articles demanded, inferred from the preceding facts, rendered it unnecessary to repair to the place of the defendant's abode. " Whenever an officer has attached estate, (said *Swift*, J.) and holds it to respond the judgment, it is necessary that a demand should be made of him on the execution. No place is prescribed by law, at which such demand must be made. It may be at the place of his abode, or wherever he may be. *If* a demand should be made of him, at a

*Middlesex,*
July,
1823.

*Higgins*
*v.*
*Emmons.*

place where the property is not, and he offers to deliver it to the officer, at the place where it is, it will be the duty of the officer to repair to such place, to receive it; but if he refuse to deliver it, at any place, this refusal will subject him to an action, whether the property were at the place where demanded or not." I consider the above principle, in a case so very analogous to the present, as entirely applicable to it; and am of opinion, that the charge to the jury was incorrect.

The other Judges were of the same opinion.

New trial to be granted.