## M. Marcus, Plaintiff in Error, v. Chicago, Milwaukee & St. Paul Railway Company et al., Chicago, Milwaukee & St. Paul Railway Company, Defendant in Error.

### Gen. No. 16,369.

1. MUNICIPAL COURT—*how form of action determined.* The form of the action in cases of the 4th class is to be determined from what the evidence shows and it is the duty of the municipal court irrespective of the name given to the action to render judgment according to what the evidence established.

2. TROVER—*what essential to maintenance.* To constitute conversion the refusal to return upon demand must be absolute and amount to a denial of the plaintiff's title to the possession.

3. COMMON CARRIERS—*what essential to contract to carry and deliver.* Delivery to the carrier at the point of shipment is essential to create a contract by the carrier to carry and deliver.

4. INTERSTATE COMMERCE ACT—*when inhibition against limiting liability does not apply.* The interstate commerce law applies only to shipments which are in the custody of carriers as carriers and before their duty as such has terminated.

Error to the Municipal Court of Chicago; the HON. EDWIN K. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed March 12, 1912.

STEIN, MAYER & STEIN, for plaintiff in error; HARRY M. ROSENBLUM, of counsel.

C. S. JEFFERSON, for defendant in error.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

Plaintiff in error brought a suit of the fourth class in the Municipal Court of Chicago against the Chicago, Milwaukee & St. Paul Railway Company and the Pere Marquette Railroad Company to recover the sum of $372.25. The case was tried before the court without

a jury and judgment was entered against plaintiff, to reverse which this cause is before us upon a writ of error.

Before the trial, the suit was dismissed as to the Pere Marquette Railroad Company. Plaintiff's amended statement of claim is upon an alleged contract of transportation between Marcus and the Railway Company for the carriage of a box of merchandise from New York City to Columbus, Wisconsin. Practically all the material facts were stipulated into the record by the parties, from which stipulation it appears that the merchandise in question was delivered to the Railway Company by Marcus at Columbus, Wisconsin, on March 21, 1907; that the company transported the box, containing it, to Milwaukee, Wisconsin, at which point it delivered the same in good condition to its connecting carrier the Pere Marquette Railroad Company; that the latter company transported the box to its connecting point; that the Delaware, Lackawanna & Western Railroad Company carried it to New York City, its destination, arriving there on April 4, 1907, in the same condition as when received by the Railway Company at Columbus; that on April 4, 1907, Solomon Bros., the consignees, being the firm which had originally sold and shipped the merchandise to the plaintiff, were notified, but refused to accept the box; that thereupon the last mentioned Railroad Company notified the defendant in error, and in turn it notified Marcus at Columbus that Solomon Bros. had refused to accept the shipment; that after the expiration of the free storage period, Solomon Bros., consignees of the goods, still refusing to accept the box, it was, by the Delaware, Lackawanna & Western Railroad Company, placed in a public warehouse.

At the time of the receipt of the shipment at Columbus by defendant in error, one Coapman was its station agent there. Early in June, 1907, Coapman

called at the store of Marcus and inquired what he would have done with the goods which he had sent to Solomon Bros. but which they refused to take. Marcus told Coapman to get them back. He replied, "You will have to pay the freight both ways," to which Marcus replied, "All right." Three or four weeks later, there was a conversation between the two at the depot at Columbus, when Coapman claimed that he had forgotten to get them, and requested patience "just a little while, I am going to attend to it. You will get the goods in just a little while." A similar interview is said to have been had between the parties in September. Marcus claimed that he did not know how far the Chicago, Milwaukee & St. Paul Railway extended; that he had always thought it ran clear through to the East. It was admitted that he paid Solomon Bros. $372.25 for the goods, but that when they were received by him, he thought they were not up to grade, and returned them.

Two letters from Marcus, dated August 8th and October 21, 1907, respectively, were introduced by the defense; the first to the effect that about seven or eight weeks previously he had been notified by the Railway Company that the box was refused by Solomon Bros., and had ever since tried to have Mr. Coapman locate it, but without success, and asking the claim agent to "try and locate same for me as soon as possible." To this letter he added a postscript, "Goods were shipped on the Erie R. R. from Milwaukee, Wis." The second letter enclosed to the claim agent a shipping bill, or bill of lading, issued by the defendant in error for the goods, and containing, among other provisions, one that if the goods were consigned beyond its line of road, they should be delivered to a connecting carrier or company for further transportation to the place of destination; the responsibility of the initial carrier to cease when the property was thus de-

livered. It was conceded that plaintiff never received the goods back from New York.

The question presented by the record in this case is whether, under the circumstances, defendant in error is liable to Marcus, either upon a contract for a return to Columbus from New York of the shipment in question, or in trover for a failure to deliver the merchandise to him upon demand.

Under the law, the Municipal Court should have entered a judgment in favor of the plaintiff if it found the Railway Company liable upon either contention, regardless of the form in which he stated his claim. Edgerton v. Chicago, Rock Island & Pacific Ry. Co., 240 Ill. 311.

We do not find the record to contain any evidence upon which to support the theory of a conversion by the Railway Company of the property in question. The element of demand being conceded, the record fails to show an absolute refusal on the part of defendant to comply with the demand. To constitute conversion, the refusal must be absolute and amount to a denial of plaintiff's title to the possession. 2 Greenleaf on Evidence, 642. It is clear from the record in this case that, at the time Marcus sought to have the box of merchandise transported from New York to Columbus, Wisconsin, it was in a public warehouse in New York, and, therefore, not in the possession of the defendant. The letters from Marcus, in which he asked the claim agent of the Railway Company to help him locate the box as soon as possible, indicate clearly that even he knew the goods were not in the possession of the Company.

The evidence in the case at bar failed to show the delivery of the goods in question to the defendant company at New York for shipment to Columbus, and, accordingly, there could be no valid contract to carry or deliver them. In Pollard v. Vinton, 105 U. S. 7, the court said:

"The receipt of the goods lies at the foundation of the contract to carry and deliver. If no goods are actually received, there can be no valid contract to carry or deliver."

The acts of Coapman (agent for defendant in error at Columbus) in the matter were merely his personal and gratuitous accommodation of Marcus, and were beyond the scope of his authority as agent for the Company to bind it. It is not contended that any express authority was shown which would authorize him to bind the Railway Company in the premises, and it is clear that, without such proof, the Company could not be held liable.

Plaintiff in error contends that, as he directed the Railway Company to return the shipment, and as it failed or refused to do so, it is liable for the value of the shipment, even though the failure to return was due to neglect or default of its connecting carrier, and he bases this contention upon the proposition that the initial carrier is liable for the defaults of its connecting carriers. He cites Mahaffey v. Wisconsin Central Ry. Co., 147 Ill. App. 43, on page 48, and cases there cited, as sustaining this proposition. The law, as stated in the case cited is that "the initial carrier is liable for the acts of succeeding carriers for the entire route," but this does not aid plaintiff in error, for clearly the initial carrier in the proposed shipment of these goods from New York to Columbus would be the Delaware, Lackawanna & Western Railroad Company or some other line from New York.

At the trial the plaintiff introduced the "Interstate Commerce Act," presumably to show that, on an interstate shipment, the Federal law prohibits the initial carrier from limiting its liability for loss and damage to its own line; but, that law has no application to the case at bar, because the liability of the last connecting carrier of the east-bound shipment, the Delaware, Lackawanna & Western Railroad Company,

as a carrier, had terminated when the goods were placed in a public warehouse, and the Interstate Commerce law applies only to shipments that are in the custody of carriers as carriers, and before their duty as such has terminated.    Norfolk & Western Railway v. Draft Milling Co., 63 S. E. 415.

Under the stipulated facts in the record, it appears that the goods in question were shipped over the line of the defendant in error only as far as Milwaukee, Wisconsin, and that they were delivered in New York by the Delaware, Lackawanna & Western Railroad Company.    If the goods were to be reshipped to Columbus over the same lines, the Delaware, Lackawanna & Western Railroad Company would be the initial carrier with which the contract of carriage would be made, and under the ''Interstate Commerce Act,'' if it had received this box of merchandise for carriage to Columbus, it could not limit its liability for loss or damage to its own line.    But that question is not presented here.

We think the court below properly found that the defendant in error was not liable to Marcus either upon a contract of shipment from New York to Columbus, Wisconsin, nor for the conversion of the merchandise.    The judgment will, therefore, be affirmed.

*Judgment affirmed.*