433 P.2d 88

I. Brian TAYLOR, Plaintiff-Appellant,

v.

A. V. W. McBEE and James W. Klipstine, Defendants-Appellees.

No. 44.

Court of Appeals of New Mexico.

Aug. 25, 1967.

Rehearing Denied Sept. 25, 1967.

Certiorari Denied Nov. 1, 1967.

**504**

I. Brian Taylor, pro se.
Lowell Stout, Hobbs, for appellees.

## OPINION

OMAN, Judge.

This is a suit filed by plaintiff, a medical doctor who specializes in ophthalmology, against the defendant McBee, who is also a medical doctor specializing in ophthalmology, and defendant Klipstine, who is an optician. The trial court found the issues in favor of the defendants and plaintiff has appealed.

Plaintiff makes no claim against defendant Klipstine on this appeal, but seeks only a reversal of the judgment dismissing his complaint against defendant McBee, who will hereinafter be referred to as defendant.

Plaintiff has asserted seven separate points relied upon for reversal. Five of these constitute attacks upon the adequacy of the evidence to support certain of the trial court's findings, one constitutes an attack on the court's failure to make certain requested findings and a conclusion which are contrary to the court's findings and conclusions, and the final one is that defendant, by delivery to plaintiff of possession, subsequent to the filing of this suit, of the property claimed to have been unlawfully detained and converted, cannot deprive plaintiff of his right to relief.

■ The principal point, and the one we believe to be determinative of this appeal, is the claimed error on the part of the trial court in finding that defendant did not wrongfully detain or convert the property of plaintiff.

[2–4] Findings and judgment of the trial court supported by substantial evidence will not be disturbed on appeal. Gilmer v. Gil-

mer, 77 N.M. 137, 419 P.2d 976 (1966); Brown v. Martinez, 68 N.M. 271, 361 P.2d 152, 100 A.L.R.2d 1012 (1961). The evidence must be viewed in the most favorable light to support the findings, and an appellate court will reverse only if convinced that the findings, thus viewed, together with all reasonable inferences to be drawn therefrom, cannot be sustained by the evidence. Varney v. Taylor, 77 N.M. 28, 419 P.2d 234 (1966); Horton v. Driver-Miller Plumbing, Inc., 76 N.M. 242, 414 P.2d 219 (1966); Hoskins v. Albuquerque Bus Co., 72 N.M. 217, 382 P.2d 700 (1963). Only that evidence and the inferences to be drawn therefrom which support the findings will be considered, and any evidence unfavorable to the findings will not be considered. Nance v. Dabau, 78 N.M. 250, 430 P.2d 747 opinion issued July 24, 1967; Luna v. Flores, 64 N.M. 312, 328 P.2d 82 (1958).

The property involved consists of approximately 4,000 medical charts, about 2,000 of which were compiled solely by plaintiff from his examination and treatment of his patients, and about 2,000 of which were originally compiled by defendant from his examination and treatment of his patients, but which charts were added to by plaintiff upon his subsequent examination and treatment of these same patients. These charts will be hereinafter referred to as plaintiff's charts and as joint charts, respectively.

Defendant practiced his profession in Hobbs, New Mexico, for many years. He had prepared medical charts of patients estimated at from 36,000 to 80,000, which charts were kept in some 40 or 42 file drawers. In February 1965 he left Hobbs to accept employment as an instructor in the medical college of the University of Kentucky.

Shortly after defendant left Hobbs, plaintiff opened his offices for the practice of his profession in the same location previously occupied by defendant. Defendant left his files of medical charts for reference use by plaintiff, but did not sell them to plaintiff. In fact, defendant sold nothing to the plaintiff.

By reason of the sudden death of a surgeon with whom defendant had hoped to work, defendant returned to Hobbs in June 1965 to resume the practice of his profession. From then until February 1, 1966, when plaintiff removed his offices to another location, they maintained separate offices in the same building, but some of their office facilities were in common, and they both had access to and used the medical files. Plaintiff, prior to moving out on February 1, 1966, had comingled his 2,000 charts with the defendant's charts, and had also added information to approximately 2,000 of defendant's charts, which were the joint charts to which reference is above made. These joint charts were also in the files. Defendant did not authorize plaintiff to comingle his charts with those of the defendant, nor did he authorize plaintiff to make additions to defendant's charts.

Relations between the parties became very strained, and on January 20, 1966, it became apparent that the relationship between them was to terminate. Their versions as to just what was said about one or the other moving out differ in some respects, but these differences are not material. Plaintiff did move out on February 1.

Between January 20 and February 1, plaintiff, his wife and his secretary used some of their time removing plaintiff's charts from the files. They removed about 500 of these charts, which plaintiff took with him. A few days after February 1, the plaintiff and his wife secured a key to the offices from the landlord, the defendant Klipstine, and they removed another 500 of plaintiff's charts.

The plaintiff challenges the court's finding that on this last occasion some 500 charts were removed. He admits charts were removed, but says the evidence fails to support that they were some 500 in number. We disagree. In any event, plaintiff concedes the claimed error is harmless.

Plaintiff at no time made any further request for a key to the offices in order to remove any more of his charts. His secretary testified that had she used all her time between January 20 and February 1 in removing plaintiff's charts, she could possibly have removed them all. However, she was also engaged in the time-consuming task of taking the names and addresses of the patients from the joint charts, in order that plaintiff could notify these patients of his change of address. Plaintiff at no time hired extra help to facilitate the removal of his charts, or to secure the information from the joint charts, except his wife did assist to some extent, as already stated.

Plaintiff admits that he was not the owner of the joint charts, but does contend he is "the owner of that portion that [he] worked on." He states that what should have been done was to have a photocopy made of these joint charts, so that both he and defendant could have had a copy. He estimated a photocopy could have been made of each of these joint charts for less than five cents. However, he made no efforts to have them reproduced and he made no offer to pay for any cost of reproducing them. He did say that Mr. Klipstine had promised to make photocopies of the ones he needed, that were his. He testified that by "my charts" he meant those which were compiled solely by him.

On March 10 plaintiff's attorney wrote defendant a letter, and that portion thereof relative to a demand for charts, or records, reads as follows: "Demand is hereby made * * * that you immediately furnish to Dr. Taylor the records of his patients now in your files."

Defendant did not reply to this letter.

Plaintiff also testified that in June he asked defendant "for all of my files." He admitted he at no time offered any assistance to defendant in having plaintiff's charts removed from the files, and that he "had made a flat demand for the delivery of the files."

Plaintiff filed a complaint against defendant with the local grievance committee of the Medical Association, and one of his grievances concerned the matter of the charts. Pursuant to the decision of the committee, defendant removed from his

files and delivered approximately another 500 of plaintiff's charts to a member of the committee, who in turn delivered them to plaintiff. Plaintiff admits he has now received about 95% of his charts.

The evidence reflects that on only two occasions were the joint charts, or the information requested therefrom, ever refused to plaintiff's secretary, who did the calling for plaintiff, since plaintiff and defendant were not on speaking terms. On one of these occasions a reference was made to surgery on a patient, and Mr. Klipstine suggested that the complete surgical notes were at the hospital, and that the information should be secured from that source. On the other occasion the defendant's secretary refused the requested information on the ground that the person was a patient of defendant. As a result, the plaintiff did a complete refraction. However, the refraction could have been avoided simply by calling the Imperial Optical Company and securing the prescriptions.

Other points of difference arose, but it is our opinion, as above stated, that our determination of the issues in this cause turns entirely upon whether or not there is support in the evidence for the court's finding that defendant did not wrongfully detain or convert property of the plaintiff.

■ Conversion is the wrongful possession of, or the exercise of dominion over, a chattel to the exclusion or in defiance of the owner's right thereto; or an unauthorized and injurious use thereof; or the wrongful detention after demand therefor by the owner. Mine Supply, Inc. v. Elayer Co., Inc., 75 N.M. 772, 411 P.2d 354 (1966); Ross v. Lewis, 23 N.M. 524, 169 P. 468 (1917); see also Restatement of Torts §§ 223, 237 (1934).

As to the joint charts, the evidence shows that these belonged to the defendant. In any event, defendant had at least an equal right with plaintiff to the ownership therein and the right to possession thereof.

■ The question arises in regard to plaintiff's charts, which it is conceded belonged to plaintiff. These charts were comingled with the defendant's charts, so that, insofar as it can be said defendant was in possession thereof, he came into this possession lawfully. Unless it can be said that the evidence compels a finding that defendant refused to surrender these charts to plaintiff [see Economou v. Carpenter, 124 Vt. 451, 207 A.2d 241 (1965)] or wrongfully used or exercised dominion over them [Rapid Sewing Center, Inc. v. Sanders, 79 S.D. 373, 112 N.W.2d 233 (1961)] he cannot be held to have wrongfully detained or converted them to his use.

Here the plaintiff made demand for the delivery to him of his property, unaccompanied by any other effort on his part to regain possession of this property, which he had comingled and left with defendant's property. Defendant did not make any absolute refusal or denial of the demand. About the most that can be said of his conduct was that he remained silent.

■ A refusal must be absolute and amount to a denial of plaintiff's title or right to possession. Marcus v. Chicago-Milwaukee & St. P. Ry., 167 Ill.App. 638. (1912).

As stated by the Supreme Court of Wyoming in Fletcher v. Pump Creek Gas & Oil Syndicate, 38 Wy. 329, 266 P. 1062, 61 A.L.R. 615 (1928):

" 'A mere detention of another's chattels, which rightfully came into one's possession, is not an actionable conversion. If, however, the detention be based on a negation of the owner's rights, or be accompanied by an intent to convert the property to the holder's own use, a right of action for a conversion will arise. * * * To constitute conversion the refusal must be absolute, and amount to a denial of plaintiff's right to the possession. * * * ' "

See also Severin v. Keppell, 170 Eng. Rep. 674 (K.B.1802); Annot., 61 A.L.R. 621 (1929); Annot., 129 A.L.R. 638, 639 (1940).

Silence alone after a demand is not equivalent to a refusal [Richards v. Pitts Agricultural Works, 37 Hun 1 (N.Y.Sup. Ct.1885)], unless the one in possession is under an obligation to deliver on demand. Higgins v. Emmons, 5 Conn. 76, 79 (1823). See also Restatement of Torts § 241 (1934). Here defendant was not obligated to separate the plaintiff's charts from the many thousands of charts belonging to defendant. In Richards v. Pitts Agricultural Works, supra, wherein an action for conversion was denied, the New York Court stated:

"In this case the defendant received payment in full for the property and informed the plaintiff where it was. Nothing appears up to that time requiring a demand of the property. The title of the plaintiff and his right to the possession were recognized. * * * There was nothing for the defendant to do but to permit the plaintiff to go and get the property. Is this silence any evidence of refusal to allow him to do so? The plaintiff did not in terms ask permission to take it from the warehouse, or for any order to do so. It is difficult, under the circumstances, to construe this failure of the defendant's man then to speak, by inference, as a denial of the plaintiff's right, or as any evidence of dominion or claim of dominion by the defendant over the property in exclusion of the plaintiff or inconsistent with his right to the immediate possession of the property. * * *"

We have carefully considered the entire record in this case, and all contentions of the parties. We are unable to say the trial court committed reversible error, and we find no merit to defendant's position that this court should assess damages and a reasonable attorney's fee as costs against plaintiff for prosecuting this appeal.

The judgment should be affirmed. It is so ordered.

SPIESS and WOOD, JJ., concur.