Thomas G. **SEIFERT**, Plaintiff-Appellee,

v.

Robert H. **SOLEM**, Defendant-Appellant.

No. 16252.

United States Court of Appeals
Seventh Circuit.

Dec. 27, 1967.

Jerome Elliott, Beloit, Wis., Garrigan, Keithley, O'Neal, Dobson & Elliott, Beloit, Wis., of counsel, for appellant.

J. Richard Long, Beloit, Wis., Roger L. Gierhart, Madison, Wis., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and FAIRCHILD, Circuit Judges.

HASTINGS, Chief Judge.

Defendant-appellant appeals from a judgment of $84,544.75 compensatory and exemplary damages entered in favor of plaintiff after trial to a jury. The jury found, based on the allegations in the complaint, that appellant made false representations and failed to make certain disclosures to plaintiff, all to plaintiff's injury and resulting loss.

The facts are in considerable dispute. In April, 1958, plaintiff was a shareholder and general manager of American Knife Company (American), a New York corporation located at Baldwinsville, New York. The corporation's principal product was an ensilage knife used in agricultural machinery. Plaintiff and the other shareholders were parties to a stock option agreement giving each shareholder the first option on another's shares. Plaintiff and another shareholder were also members of a partnership selling some of the corporation's products. Plaintiff's salary from the corporation was $7,000 per year, in addition to which he received $7,679.36 [1] in partnership income in 1956 through 1958, inclusive.

According to plaintiff, appellant came to plaintiff's office on April 25, 1958. Appellant asked whether American was for sale and stated he wished to merge it with Anderson Knife & Bar Company (Anderson) at Anderson, Indiana, which appellant had acquired. Appellant indicated that he wished to reactivate Anderson, which had been dormant for several months. He indicated that he needed heat treating equipment, which American had, and a manager.

Plaintiff told appellant he had invested all his savings in American, that it was his livelihood, and that he would not sell his stock in American. He advised appellant that the remaining stock in American was probably for sale, but that he had the first option to acquire it. He agreed to waive his option if appellant and the other American shareholders arrived at an agreement for the sale of the stock to appellant.

Plaintiff also told appellant that if there were a merger between American and another company, he would trade his American stock for stock in the surviving company and continue his manager-shareholder relationship with the surviving company.

Plaintiff testified that although there was no agreement between him and appellant, appellant stated that if the sale were consummated, the physical assets would be moved to Anderson and plaintiff

---

[1]. Appellant contends this figure is excessive by $1,700.

would become general manager of the Anderson plant.

In June, 1958, appellant purchased, with plaintiff's approval, all the stock of American except seventy-five shares (approximately twenty-eight percent of the outstanding shares) held by plaintiff. Plaintiff and appellant formed a new partnership for the sale of American's products.

After appellant's stock purchase, plaintiff remained as president of American. During the summer and fall of 1958, he supervised the dismantling of American's Baldwinsville plant and the shipment of its equipment to Anderson's plant. In December, 1958, he moved into a house he had purchased at Anderson, Indiana. He then began acting as manager of Anderson's plant.

On December 18, 1958, at plaintiff's house, appellant suggested the necessity of liquidating American. Consistent with an oral agreement, plaintiff insisted on an exchange of his American stock for stock of equal value in "the Anderson operation." Appellant was strongly opposed to an exchange of stock and urged plaintiff to sell for cash since it would be long before stock in the Anderson operation would be worth very much. After a lengthy discussion appellant agreed to exchange 8,000 shares (later increased to 8,250 shares) of Anderson stock for plaintiff's American stock. Plaintiff estimated the value of the American stock at $12,375.

The exchange of stock was consummated on December 31, 1958. At that time plaintiff believed Anderson to be an operating company and believed his position to be that of general manager.

On February 5, 1959, appellant asked plaintiff to witness appellant's signature on a document. Plaintiff started to read the document, but was told by appellant that he need not read it, as it was a routine matter. Plaintiff signed it as a witness without reading it. The document was a lease agreement by which Anderson leased to Wisconsin Knife Works (Wisconsin), a partnership wholly owned by appellant and his wife, all of

its real and personal property for five years at a rental of $2,500 per month. The lease agreement purported to affirm a verbal contract made on or about January 1, 1958.

On August 25, 1959, plaintiff and appellant agreed to settle their partnership interests. On October 20, 1959, appellant terminated plaintiff's employment with Anderson.

Plaintiff testified that he had no knowledge of the lease of assets until after his dismissal and that he did not know Anderson would not be an operating company until he learned of the lease, although he had heard of that possibility as early as December 18, 1958.

Plaintiff was unable to secure employment until August 10, 1961, nearly two years after his discharge. His employment was in New York, requiring him to sell his house in Anderson, at a loss of $4,064.25.

Appellant's evidence contradicts the foregoing version of the facts in the following respects.

First, appellant maintains his April 25, 1958 discussion with plaintiff concerned formation of a knife company at Anderson that would be a branch of Wisconsin. That he told plaintiff if he acquired American, he would move it to Anderson, Indiana, and merge it with his Wisconsin operations. He denies stating that plaintiff would become manager at Anderson; instead, that he told plaintiff three or four executives would be needed and plaintiff might have to accept the position of plant manager or sales manager. Furthermore, he says he was not told of the stock option until after his purchase of the American shares.

Second, appellant denies that plaintiff ever acted as general manager. According to him, plaintiff was in charge of the movement and installation of American's machinery and, beginning early in 1959, was sales manager of Anderson.

Third, appellant says that, at the December 18, 1958 meeting at plaintiff's house, plaintiff first sought to exchange his American stock for an interest in

Wisconsin and when appellant refused that offer plaintiff suggested an exchange of his American stock for stock in Anderson. Appellant agreed to the exchange of stock, after cautioning plaintiff that there was no hope Anderson could pay dividends for eight or ten years.

Finally, appellant contends plaintiff knew of the lease of Anderson's plant and machinery no later than February 5, 1959, and knew Anderson would not be an operating company no later than January 1, 1959.

The jury returned a special verdict based on its answers to thirty-three special interrogatories submitted to it. It found that appellant had falsely represented to plaintiff at their Baldwinsville meeting on April 25, 1958, that Anderson would be reactivated as an operating company, that plaintiff would be employed as general manager of Anderson, and that American would be merged with Anderson. It found that at sometime prior to the exchange of stock appellant misrepresented to plaintiff the value of the Anderson stock.

It further found that from April 25, 1958, until January 1, 1959, or thereafter, appellant had failed to disclose to plaintiff the lease of Anderson's plant and machinery, and that from April 25, 1958, until January 1, 1959, appellant had failed to disclose to plaintiff that some of the machinery in Anderson's plant was not Anderson's property.

Each of these false representations and nondisclosures, the jury found, was intended by appellant to induce plaintiff to waive his first option on the American stock, to purchase a house and move to Anderson, to accept employment with Anderson, or to exchange his American stock for stock in Anderson. And, further, that plaintiff did some of the above in reliance on appellant's false representations and nondisclosures and was injured as a consequence. Finally, the jury found that on August 25, 1959, the date of the partnership settlement, plaintiff did not know that Anderson was not to be an operating company and did not

know that Anderson's plant and machinery were leased to Wisconsin.

Appellant does not challenge the trial court's instructions on the law of fraud. There being no plain error in the instructions, we assume they correctly state the applicable substantive law.

Appellant presents six grounds for reversal of the judgment in question.

His first ground is that the verdict is against the clear weight of the evidence and therefore violates the standard that fraud must be established to a reasonable certainty by evidence that is clear, satisfactory and convincing. Specifically, appellant questions whether there is clear, satisfactory and convincing evidence that appellant failed to disclose the Wisconsin lease until January 1, 1959, or thereafter, and that on August 25, 1959, plaintiff did not know of the lease or that Anderson would not become an operating company.

■ There is considerable evidence in the record that plaintiff knew of the lease for several months before his discharge. There is virtually no evidence contradicting plaintiff's testimony that he was unaware of the lease at the time he exchanged his stock on December 31, 1958. In the absence of such contradiction, the jury could fairly find the evidence clear and convincing.

■ The question whether plaintiff knew on August 25, 1959, that Anderson's property had been leased and that Anderson would not be an operating company resolves itself into the question whether plaintiff's testimony and that of his witnesses or appellant's testimony and that of his witnesses should be credited. Credibility resolutions are, of course, solely within the province of the jury. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); Kraklau v. Bayman, 7 Cir., 318 F.2d 400 (1963); Baker v. Pinkston, 7 Cir., 314 F.2d 379 (1963).

■ In light of the jury's apparent determination to credit plaintiff's testimony and reject appellant's, we cannot say there is not clear, satisfactory and

convincing evidence of plaintiff's ignorance of Anderson's status on August 25, 1959. The physical evidence relied on by appellant, consisting of letters and the August 25 agreement, may be persuasive that plaintiff should have known of Anderson's status by August, 1959, but it does not so weaken the convincing effect of plaintiff's testimony as to require us to set aside the verdict. In the present posture of this case, we are required to consider the evidence in the light most favorable to plaintiff.

■ Appellant contends that the verdict was excessive and based on prejudice and passion. As a basis for the alleged bias, he cites the admission of evidence of his wealth and the duration of the trial beyond the time the jurors were told it might end. A defendant's wealth may be considered by a jury in awarding exemplary damages. Restatement, Torts § 908(e) (1939); 25 C.J.S. Damages § 126(2), (3) (1966). The evidence established that appellant had a net worth of $750,000. The second purported basis for prejudice is frivolous.

Specifically, appellant argues that the evidence is insufficient to support the awards for lost wages and for other compensatory damages and that the award for exemplary damages was excessive. We agree with the trial court's determination of these contentions in denying appellant's motion to set aside the verdict and for a new trial.

■ The jury could fairly have found that plaintiff's employment at American would have continued until August, 1961, when he secured employment following his discharge by appellant. They could fairly have found that, as plaintiff testified, the Anderson stock he received in exchange for his American stock was virtually worthless. Finally, in view of the finding of approximately $40,000 in actual damages and the extent of appellant's net worth, the award of $45,000 exemplary damages was not unreasonable or excessive.

■■ On the first day of trial, the court granted plaintiff leave to amend his complaint to include a claim for exemplary damages. Appellant contends this was an abuse of discretion and that the amendment came after the statutes of limitations on frauds had run in Indiana, New York, and Wisconsin.

Rule 15(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that after a responsive pleading is served, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

The Supreme Court, in Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed. 2d 222 (1962), has said, with respect to this provision:

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court * * *." Id. at 182, 83 S.Ct. at 230.

Appellant has not shown how the amendment prejudiced him, and no prejudice is apparent to us.

The state statutes of limitations are irrelevant, since the amendment relates back to the filing of the original complaint. Ruckman and Hansen, Inc. v. Contracting & Material Co., Inc., 7 Cir., 328 F.2d 744 (1964).

Appellant's final contention, that the question of exemplary damages should not have gone to the jury because there was no proof of gross fraud or oppressive conduct, merely raises again the questions disposed of above.

In sum, after viewing the evidence, in a light most favorable to the prevailing party, leaving issues of credibility with the jury, we hold that the trial court did not abuse its discretion in denying ap-

**930**

pellant's motion for a new trial; that there is sufficient credible evidence in the record to support the jury's verdict for loss of wages, compensatory damages and exemplary damages; and that the trial court did not err in allowing plaintiff to amend his complaint and in submitting the question of exemplary damages to the jury.

The judgment appealed from is in all respects affirmed.

Affirmed.