557 P.2d 576

Samuel and Dorothy ARAGON, Plaintiffs-Appellants,

v.

GENERAL ELECTRIC CREDIT CORPO-RATION, Defendant-Appellee.

No. 2385.

Court of Appeals of New Mexico.

Oct. 12, 1976.

Rehearing Denied Nov. 8, 1976.

Certiorari Denied Dec. 16, 1976.

**724**

James A. Burke, Northern New Mexico Legal Services, Inc., Santa Fe, for plaintiffs-appellants.

Michael L. Gregory, Las Vegas, for defendant-appellee.

## OPINION

SUTIN, Judge.

Plaintiffs sued defendant for compensatory and punitive damages arising out of the conversion of two insurance checks mailed to defendant for endorsement. Judgment was entered for defendant. Plaintiffs appeal. We reverse.

On September 25, 1969, plaintiffs purchased a mobile home from Fountain Mobile Home under a conditional sale contract, the form of which was that of defendant. Under the terms of this contract, title to the mobile home remained in the seller until the obligation was satisfied. The seller's interest in this contract and in the mobile home was assigned to defendant the same day it was executed.

Plaintiffs were obligated to pay a regular monthly installment of $97.77 for a period of 84 months. In addition, as a part of the contract price, plaintiffs purchased insurance to protect them against damage to the mobile home. In April 1973, plaintiffs suffered extensive snow damage to the roof of the mobile home. In September, 1973, plaintiffs received a check from the insurance carrier in the sum of $1,000.00 which was insufficient to pay the loss sustained. It was made payable to plaintiffs and to defendant as the loss payee. Plaintiffs mailed the check to defendant in Denver, Colorado, for endorsement. Defendant advised plaintiffs that the check would not be endorsed until defendant received proof that the repairs were completed, despite the fact that defendant knew plaintiffs did not have money available to make the repairs.

About January 21, 1974, plaintiffs received an additional check from the insurance carrier in the sum of $868.68. It was also mailed to defendant. Defendant misplaced this check for a few weeks.

Plaintiffs instituted this action on February 28, 1974. On June 25, 1974, the parties entered into an agreement whereby defendant authorized disbursement to plaintiff of the major portion of the insurance proceeds. Defendant refused plaintiffs' request for the balance of the insurance proceeds in the sum of $290.00, pending defendant's inspection of the repairs, which inspection was never performed. At the time of trial, defendant had the remaining $290.00 in its possession.

From the date of the loss in April of 1973, through the trial of the case on May 16, 1975, plaintiffs were not in default on the contract payments.

The trial court found, inter alia:

4. The said financing contract provides that Defendant shall be the recipient of all insurance proceeds during the life of the contract and further provides that Plaintiffs shall receive any insurance proceeds in excess of Plaintiffs' monetary obligation to Defendant.

\*     \*     \*     \*     \*     \*

12. That Defendant has disbursed to Plaintiffs the sum of $1578.00 from the monies received as insurance settlement for the purpose of repairing the damage covered by the insurance loss.

13. That Defendant still holds the sum of $290.00 as part of the insurance settlement.

14. That the mobile trailer home has still not been completely repaired; but it is in such a state of repair that the trailer is not subject to further direct damage from the elements.

The court concluded, inter alia:

2. The Defendant was entitled to retain the insurance proceeds until proof of repair had been tendered.

3. The Defendant acted in accordance with the terms of its contract and in good faith.

The pertinent provisions of the contract read as follows:

> Buyer agrees to obtain and maintain, for the life hereof and at his expense, insurance against all physical damage, in form, amount and written by an insurer satisfactory to holder, *proceeds to be payable as interests shall appear*. . . . Buyer hereby designates holder as loss payee and assignee of any monies not in excess of the unpaid balance hereunder which may become payable under such and other insurance, including return of unearned premiums, and directs any insurance company to make payment direct to holder *to be applied to said unpaid balance* and appoints holder as attorney in fact to endorse any draft. . . . [Emphasis added].

These provisions mean that, in the event of damage, the proceeds of plaintiffs' insurance policy are payable as the interests of plaintiffs and defendant appear. The interest of defendant is that defendant is the owner of the property and the loss payee "of any monies not in excess of the unpaid balance"; that the monies shall be paid to defendant "to be applied to *said* unpaid balance." This language clearly states that defendant, as loss payee, is entitled to the proceeds when the amount of the loss equals or is less than the unpaid balance. But the proceeds are "to be applied to said

unpaid balance". The interest of the plaintiffs is, that they are entitled to all money in excess of the unpaid balance. The contract does not provide that defendant can hold the checks until proof of loss of repairs is made by plaintiff. Neither did defendant contend below that it intended to apply the proceeds on the unpaid balance.

On November 14, 1973, defendant wrote plaintiff Sam Aragon:

> As explained to you several times before, there is no way we can release the $1,000.00 check from American Reliable Insurance Co. until the repairs are completed and we have verified the work has been done. In order to protect our investment, *it is a company policy* that the work be done before the insurance check is released. [Emphasis added].

■ From the time defendant first notified plaintiffs that it would not release the $1,000.00 check until the repairs were completed, defendant violated the terms of its contract. Plaintiffs were not bound by defendant's company policy. Defendant's interest in the proceeds of the checks for $1,868.68 disappeared when the proceeds were not applied to the unpaid balance. The interest of the plaintiffs to the proceeds of the checks became primary. The proceeds of the checks belonged to plaintiffs. The ownership of the proceeds of the checks is equivalent to the ownership of the checks. Plaintiffs had title to the checks when first notified, and the right to the immediate possession of the checks. Defendant had a duty to endorse the checks and return them to plaintiffs. Thereafter, defendant continued to deny plaintiffs possession of the checks, and defendant was in wrongful possession of them.

■ An action in conversion will lie if at the time of conversion, plaintiff had ownership of the chattel or had the right to possession thereof. *O'Dell v. Garrett*, 82 N.M. 240, 478 P.2d 568 (Ct.App.1970). A check can be the subject of a conversion action. *Evans v. Mortgage Investment*

*Co. of El Paso, Texas,* 84 N.M. 732, 507 P.2d 793 (Ct.App.1973). The record shows that plaintiffs were the owners of the checks and they had the right to immediate possession of them. After demand by plaintiffs, and wrongful detention by defendant, defendant became liable for the conversion of the checks or the proceeds of the checks, to the detriment of plaintiffs. *Taylor v. McBee,* 78 N.M. 503, 433 P.2d 88 (Ct.App.1967.)

■ Plaintiffs are entitled to recover compensatory damages from defendant for conversion.

Plaintiffs also seek punitive damages. The trial court concluded that "Defendant acted in accordance with the terms of its contract and in good faith." We disagree.

■ "Bad faith" means "any frivolous or unfounded refusal to pay; it is not necessary that such refusal be fraudulent." *Curtiss v. Aetna Life Insurance Company,* (Ct.App.) No. 2338, decided June 15, 1976, cert. denied July 15, 1976; *State Farm General Insurance Company v. Clifton,* 86 N.M. 757, 527 P.2d 798 (1974).

■ Defendant had no right to impose on plaintiffs its "company policy", absent prior notice or agreement, and with knowledge that plaintiffs were unable to make the repairs without the money. Defendant made no attempt to assist plaintiffs in repairing their home for a period of nine months from September, 1973 to June 25, 1974 when defendant authorized disbursement to plaintiffs of the major portion of the insurance proceeds. Defendant had a duty to disburse the money when it received the check for endorsement. Upon demand having been made, defendant refused to endorse the checks and send them to plaintiffs. Defendant did not act in good faith. It was an "unfounded refusal to pay."

Plaintiffs are entitled to punitive damages.

During the trial of the case, plaintiffs sought to question defendant on its financial condition. Objection was made by defendant and sustained by the trial court despite plaintiffs' offer of proof that punitive damages were being sought and therefore wealth was relevant.

This is a matter of first impression in New Mexico.

■ The general rule is clear that evidence is admissible to consider defendant's wealth and pecuniary ability in fixing the amount of punitive damages. 25 C.J.S. Damages § 126(2) and (3) (1966); 22 Am. Jur.2d Damages, § 322 (1965); *Acheson v. Shafter,* 107 Ariz. 576, 490 P.2d 832 (1971); *Cox v. Stolworthy,* 94 Idaho 683, 496 P.2d 682 (1972); *Southern Pacific Company v. Watkins,* 83 Nev. 471, 435 P.2d 498 (1967); *Seifert v. Solem,* 387 F.2d 925 (7th Cir. 1967). See, *McCauley v. Ray,* 80 N.M. 171, 453 P.2d 192 (1968); *Whitehead v. Allen,* 63 N.M. 63, 313 P.2d 335 (1957). We adopt this rule. Plaintiffs were entitled to introduce evidence of defendant's financial condition. Evidence of defendant's worth is a proper consideration when assessing punitive damages.

We reverse and remand to the trial court to vacate its judgment and award the plaintiffs compensatory and punitive damages. The trial court is further directed to reopen litigation for the limited purpose of admitting evidence of defendant's financial status.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.