630 P.2d 292

Joachim F. WIRTH and Elizabeth Wirth,
Plaintiffs-Appellees,

v.

COMMERCIAL RESOURCES, INC., a
New Mexico Corporation; Cabiwhiba,
Inc., a New Mexico Corporation; Com-
mercial-Cabiwhiba Joint Venture; Wil-
liam A. McGregor and Beverly B.
McGregor, Defendants-Appellants.

No. 4797.

Court of Appeals of New Mexico.

May 7, 1981.

Writ of Certiorari Denied
June 23, 1981.

Paul R. Caldwell, Arthur B. Lofton, Caldwell & Lofton, P.A., Santa Fe, for defendants-appellants.

Jere C. Corlett, James E. Thomson, Santa Fe, for plaintiffs-appellees.

## OPINION

LOPEZ, Judge.

Our previous unpublished Decision in this matter is withdrawn and this opinion is substituted therefor.

This case arises out of an allegedly fraudulent sale of real estate by defendants, who are land developers, to plaintiffs. A jury awarded $60,000.00 in damages to Mr. and Mrs. Wirth (hereafter Wirth). The defendants—two corporations in a joint venture and their shareholders, (hereafter collectively referred to as McGregor, the name of the stockholders)—raise five major points on appeal. Broadly the issues are: 1) whether plaintiffs proved they are entitled to compensatory damages; 2) whether withholding a certain adverse report concerning the availability of water could construe fraud under the circumstances; 3) whether punitive damages could properly be awarded; 4) whether the damages are excessive; and 5) whether there was error in admitting and precluding certain evidence, or error resulting from statements and conduct of plaintiffs' counsel.

Finding the defendants' contentions without merit, we affirm. We need not consider the motion to strike the Reply Brief, because we rule against defendants in any event.

■ Before turning to the issue, we note that the Statement of Proceedings in the Brief-in-Chief does not conform to N.M.R. Civ.App.P. 9(m), N.M.S.A.1978. Among other things, that rule requires that when the case was tried by a jury, the Statement of Proceedings must include a short statement of the undisputed ultimate facts necessary to an understanding of the material issues on appeal and a brief summary of any conflicts in evidence material to the appeal, along with appropriate transcript references.

On July 25, 1976, Wirth and McGregor entered into a real estate contract whereby Wirth agreed to purchase a tract of undeveloped land for residential use for $36,000. The land was part of a 160 acre plot on the foothills southeast of Santa Fe which McGregor planned to divide into twenty-four tracts. McGregor agreed to provide adequate water for Wirth's domestic use. The water was to come from a well which would be shared with the future owners of five other tracts. After the purchase, Wirth built a home on the land. The well used by Wirth, called the Steven Goodyear well, provided him with water for less than six months before running dry.

Wirth sued McGregor for breach of contract and for fraud. The fraud count was based in part on McGregor's failure to inform Wirth of a report by hydrologist Zane Spiegel, written in July 1973, that indicated there might not be sufficient water for the proposed subdivision. Other misrepresentations and omissions were alleged as well. The general verdict returned by the jury did not indicate the grounds on which they found liability.

■ *Compensatory damages.* McGregor argues that because of conflicting testimony concerning the availability of water on the property, Wirth has failed to show he suffered any damages. In considering the evidence, we are mindful that we must view the facts in the light most favorable to the prevailing party, indulge all reasonable inferences in support of the verdict, and disregard all inferences or evidence to the contrary. *Anaconda Co. v. Property Tax Dept.*, 94 N.M. 202, 608 P.2d 514 (Ct.App. 1979), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980); *Duke City Lumber Co. v. Terrel,*

88 N.M. 299, 540 P.2d 229 (1975). Mr. Gordon Veneklasen, an hydrologist, testified that the well was not supplying enough water for even one household, and that Wirth would be foolish to attempt to drill another well on his property. There was evidence that Wirth had ceased to use the Steven Goodyear well and was obtaining water temporarily from a neighbor. From this the jury could conclude that Wirth does not have an adequate supply of water and that he has been damaged.

McGregor next asserts that, even if Wirth has proven the existence of damages, he has not proven the amount. He argues first that Wirth had to prove the cost of obtaining an adequate supply of water on the property, which he failed to do, and second that Wirth's subjective evaluation that the property was worthless to him without water interfered with a proper determination of the amount of damage he suffered.

McGregor cites no authority for his first argument, and we have found none to support it. According to Dobbs, the difference between the actual value of a piece of land and the price paid for it is one of the proper measures for damages for deception. Dobbs, *Remedies* § 9.2 (1973). As will be discussed, Wirth introduced evidence to show this measure. He was not required to prove what it would cost him to remedy the existing situation in order to recover.

The second argument is equally without merit. Citing *Duke City Lumber Co.*, McGregor suggests that Wirth's subjective evaluation of the value of his property without water was misleading. *Duke City Lumber Co.* does not stand for the proposition that an owner can never testify as to the value of his property. Rather, the court stated that the market value of property is not dependent on the owner's financial ability to use the property. In that case, the property in question, a lumber mill, was useless to the owner because he did not have the funds necessary to operate it; but it would not have been a valueless acquisition for someone who could operate it. The instant case is different because Wirth's house would be worthless to anyone, as long as it had no water. More importantly, Wirth was not the only person to testify that the property was currently worthless. Mr. George Olcott, a real estate appraiser, testified that the value of the house and land with water was $194,100.00, and that without water it had no value. Mr. Charles Atwell, a real estate agent, testified he would not take a listing of Wirth's house, should he want to place it on the market, since it had no water. Wirth presented evidence of the amount he paid for the property and evidence that he had spent over $100,000.00 to construct the house. Such evidence is proper to establish damages for deception, *see generally*, Dobbs, *supra*, or for breach of contract. *See generally*, Dobbs, §§ 12.1, 12.3. From the evidence, the jury could arrive at an award. Where there is a legal right to recover damages, the amount need not be proven with mathematical certainty. *Robert E. McKee General Contractor, Inc., v. Insurance Co. of North America*, 269 F.2d 195 (10th Cir. 1959); *see Nosker v. Western Farm Bureau Mutual Insurance Co.*, 81 N.M. 300, 466 P.2d 866 (1970). The lack of certainty that will prevent a recovery is uncertainty as to the fact of damages, and not as to the amount. *Id.* As already stated, Wirth proved he was entitled to damages, and the record shows that he presented sufficient evidence for the jury to determine the amount of compensation that was his due.

*Fraud.* Wirth alleged that McGregor's failure to reveal the existence of a report by hydrologist, Dr. Zane Spiegel, which questioned the availability of the underground water in the area, constituted fraud. McGregor did reveal the existence of favorable hydrology reports, one by Mr. Charles Hagerman and the other by Mr. Gordon Veneklasen, as well as the evidence of an adverse report by Mr. W. K. Summers. McGregor presented Wirth with a copy of a report by H.U.D. which warned of the divergent opinions as to the availability of water in the area. Page eleven of the report states, however, that of the eleven

wells required and drilled for the McGregor subdivisions, all but one are deemed adequate. Consequently, Wirth maintains that the H.U.D. report is not adverse. He testified that he never saw the Summers report and that McGregor had told him that it was not something to worry about because the man was from the southern part of the State and didn't know much about the Santa Fe area.

To sustain an action for fraud it must be shown that a false representation was made, either knowingly or recklessly, with the intent to deceive, for the purpose of inducing the other party to act, and that the other party did rely and act on it to his own injury. *Sauter v. St. Michael's College*, 70 N.M. 380, 374 P.2d 134 (1962). While the elements of fraud must be shown by clear and convincing evidence, *id.*, the reviewing court will not weigh the evidence and will resolve all conflicting evidence in favor of the prevailing party. *Duke City Lumber Co.* An omission as well as an act, may constitute fraud. When one is under the duty to speak, but remains silent and so fails to disclose a material fact, he may be liable for fraud. *Everett v. Gilliland*, 47 N.M. 269, 141 P.2d 326 (1943). To reveal some information on a subject triggers the duty to reveal all known material facts. *Id.* Having discussed the availability of water with Wirth, McGregor was under a duty to disclose all material facts concerning this problem.

McGregor argues that the Spiegel report was not material for several reasons. First, he maintains that it was inaccurate. Evidence was offered to the contrary at trial, however. Wirth's expert hydrologist, Mr. Veneklasen, agreed at trial with the Spiegel report. Second, McGregor maintains that the report was not material because it did not pertain to the Steven Goodyear well, but to a preliminary test well. Wirth asserts the report indicated there was insufficient water for the entire subdivision. Since the report was entered into evidence, the jury could examine it and determine for itself what weight to give it. McGregor also argues that Wirth failed to show that he would have relied on the Spiegel report. He claims that since Wirth disregarded the Summers and H.U.D. reports, he would have ignored the Spiegel report as well. Wirth replies the H.U.D. report is not adverse, and at trial he explained that he ignored the Summers report on the advice of McGregor. He also stated that he would not have bought the property had he seen the Spiegel report. From the evidence presented, the jury could have found that the Spiegel report was material.

Citing *Krupiak v. Payton*, 90 N.M. 252, 561 P.2d 1345 (1977), McGregor asserts that there is no fraud in failing to warn of a possible future problem. *Krupiak* does not stand for such a proposition. In that case, a home builder sold homes to the plaintiffs without warning them that the city might levy a special assessment against the lots to improve an unpaved street on which they bordered. The builder had been told of that possibility when he himself purchased the lots, and received a discount on the price for that reason. The court held that his failure to warn the plaintiffs was not fraud, because he had no superior knowledge concerning the city's assessment plans. It was clear to everyone that the street was unpaved, and anyone could have surmised that someday the city might decide to pave it. In the case before us, it was not self-evident that the underground water supply would run out. Through the Spiegel report, McGregor had superior knowledge of the possibility of that event occurring. *Krupiak* does not abolish McGregor's duty to disclose all material facts concerning the property.

Finally, McGregor argues that since the Spiegel report was a matter of public record, Wirth had a duty to investigate and find it. In New Mexico, the vendee has no duty to investigate the statements of the vendor. *Steadman v. Turner*, 84 N.M. 738, 507 P.2d 799 (Ct.App.1973). Wirth had no duty to discover the report.

The jury could have found that, by itself, the failure to disclose the Spiegel report constituted fraud. There was, how-

ever, other evidence of fraud also. McGregor failed to inform Wirth that the Veneklasen and Hagerman reports were based upon facts about the subdivision that were no longer true, or that two dry holes had been drilled in the area of the Steven Goodyear well. McGregor told Wirth that the Steven Goodyear well was the best well in the subdivision, when, in fact, another well produced more than eight times as much water per minute. He misrepresented the driller of the Steven Goodyear well as saying that it was a good well, when he actually said that it was marginal and should have been drilled deeper. The record contains clear and convincing evidence of fraud which would support a jury finding to that effect.

 *Punitive damages.* Of the total award of $60,000.00, $10,000.00 was for punitive damages. As set out in *Loucks v. Albuquerque National Bank*, 76 N.M. 735, 747, 418 P.2d 191, 199 (1966):

Punitive * * * damages may be awarded only when the conduct of the wrongdoer may be said to be maliciously intentional, fraudulent, oppressive or committed recklessly or with a wanton disregard of the plaintiffs' rights.

There was substantial evidence from which the jury could have found that McGregor's conduct was fraudulent or committed recklessly or with a wanton disregard of Wirth's rights. The jury could properly award punitive damages.

 *Excessive damages.* The reviewing court will not find an award of damages excessive except in extreme cases. *Lujan v. Reed*, 78 N.M. 556, 434 P.2d 378 (1967). On appeal, a jury award will not be set aside as excessive, unless: 1) the evidence, viewed in the light most favorable to the plaintiff, does not substantially support the award; or 2) there is an indication that the jury was swayed by passion or prejudice, or employed a mistaken measure of damages. *See, Gonzales v. General Motors Corp.*, 89 N.M. 474, 553 P.2d 1281 (Ct.App. 1976). None of the above circumstances are present in the instant case. Furthermore, the award is to be sustained if it is within

the allowable limits of the evidence. *See, Robert E. McKee General Contractor.* The evidence presented by Wirth would support compensatory damages substantially greater than $50,000.00. The award of compensatory damages is not excessive.

 Nor is there error in the amount of punitive damages awarded by the jury. The trier of fact has broad discretion in determining the amount of punitive damages, *Eslinger v. Henderson*, 80 N.M. 479, 457 P.2d 998 (Ct.App.1969), so long as it bears a reasonable relationship to the injury and actual damages of the plaintiff. *Marler v. Allen*, 93 N.M. 452, 601 P.2d 85 (Ct. App.1979). We find nothing wrong with the jury award of $10,000.00 in punitive damages.

 *Other error.* McGregor claims that the court's failure to allow the testimony of Mr. John Patterson, McGregor's former attorney, was error. The court disallowed this witness because he was not included in the pretrial order. According to N.M.R.Civ.P. 16, N.M.S.A.1978, "[a pretrial] order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." The trial court does not abuse its discretion when it refuses to allow the testimony of a witness not included in the pretrial order, when that witness is not presenting rebuttal evidence. *Martinez v. Rio Rancho Estates, Inc.*, 93 N.M. 187, 598 P.2d 649 (Ct. App.1979). Although defense counsel tried to characterize Mr. Patterson's testimony as "rebuttal", it was not such. As suggested in the pretrial order, rebuttal witnesses are those persons "the necessity of whose testimony reasonably cannot be anticipated before the time of trial". Mr. Patterson's testimony was to discredit Wirth's credibility, generally. Being part of the planned defense, it was not rebuttal evidence. The court did not err in refusing to allow it.

 McGregor's next contention, that plaintiff's continued references to McGregor's wealth was grounds for a mistrial, is without merit. Generally, evidence of the defendant's wealth is admissible for

the purpose of determining the amount of punitive damages. *Aragon v. General Electric Credit Corp.*, 89 N.M. 723, 557 P.2d 572 (Ct.App.), *cert. denied*, 90 N.M. 7, 558 P.2d 619 (1976). Punitive damages were awarded; the references to McGregor's wealth were not grounds for a mistrial. Equally weak is defendant's contention that the references to and evidence of his wealth constituted plain error.

 The submission of stale financial statements from 1975, 1978, and 1979 to show McGregor's assets is also claimed to be error. Because counsel failed to specify the grounds of his objections at trial, however, the error, if any, is not preserved on appeal. *Hunter v. Kenney*, 77 N.M. 336, 422 P.2d 623 (1967).

We find no merit in defendant's remaining arguments concerning the closing argument by plaintiff's counsel and other misconduct. Evidence of McGregor's offers to help ease Wirth's problems was not kept from the jury, except for offers made after the commencement of the lawsuit. Evidence that the county had blocked further sales of land in the development was not objected to at trial. Moreover, McGregor brought up the subject twice himself. McGregor admits he may not have objected at trial to all the misconduct he now asserts, but argues we should apply the rule of *Griego v. Conwell*, 54 N.M. 287, 222 P.2d 606 (1950). In *Griego*, the Supreme Court warned that statements outside the record and inflammatory comments by counsel could result in the reversal of a judgment and the award of a new trial, even if objections were not made at trial. That rule was explained in *Grammer v. Kohlhaas Tank & Equipment Co.*, 93 N.M. 685, 604 P.2d 823 (Ct.App.1979), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980), where we established that we would not apply the *Griego* rule "unless we are satisfied that the argument presented to the jury was so flagrant and glaring in fault and wrongdoing as to leave the bounds of ethical conduct." *Id.* at 693, 604 P.2d at 831. Nothing in the remarks of Wirth's counsel even approach the glaringly improper or unethical. There were no misstatements of fact or other misconduct which would merit reversal.

 Finally, McGregor asserts that, in light of the cumulative effect of all of the alleged error, the trial court's refusal to amend the judgment or grant a new trial is an abuse of discretion. When the court exceeds the bounds of reason, there is an abuse of discretion. *Acme Cigarette Services, Inc., v. Gallegos*, 91 N.M. 577, 577 P.2d 885 (Ct.App.1978). There is no abuse of discretion in sustaining a verdict when it is supported by substantial evidence. *See generally, id.* There is substantial evidence to support the jury's verdict and award of damages.

Finding no error in the proceedings, we affirm the judgment of the district court.

IT IS SO ORDERED.

HERNANDEZ, C. J., and ANDREWS, J., concur.