2006-NMCA-015

128 P.3d 476

William F. McNEILL, Marilyn Cates,
and the Black Trust, Plaintiffs–
Appellants,

v.

RICE ENGINEERING AND OPERATING
INC., Rice Operating Company, Hobbs
Salt Water Disposal System, whose Gen-
eral Partner is Rice Operating Compa-
ny, et al., Defendants–Appellees.

No. 25,213.

Court of Appeals of New Mexico.

Nov. 22, 2005.

Certiorari Denied, No. 29,504,
Feb. 1, 2006.

James P. Lyle, Law Offices of James P. Lyle, P.C., Albuquerque, Turner W. Branch, Branch Law Firm, Albuquerque, Robert Trenchard, Royce Hoskins, Trenchard & Hoskins, L.L.P., Kermit, TX, for Appellants.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, John M. Caraway, McCormick, Caraway, Tabor & Riley, LLP, Carlsbad, Franklin H. McCallum, Midland, TX, for Appellees.

## OPINION

SUTIN, J.

{1} Appellees' motion for rehearing filed November 1, 2005, is denied. The formal opinion filed in this appeal on October 21, 2005, is withdrawn and this opinion is filed in its stead.

{2} This is the second appeal arising from a dispute over the disposal of salt water generated from oil and gas drilling. *See McNeill v. Rice Eng'g & Operating, Inc.*, 2003–NMCA–078, 133 N.M. 804, 70 P.3d 794. Salt water is a waste product from oil and gas drilling operations. It is disposed of in wells used to reinject the water into geological formations comparable to those from which the product originated. Plaintiffs, the appellants in this appeal, are owners of, and heirs and successors-in-interest to, lands called the McNeill Ranch (the Ranch). Defendants, the appellees in this appeal, are operators of a salt water disposal system called the Hobbs Salt Water Disposal System (the Disposal System). As part of the Disposal System, salt water was injected into a disposal well called Well E–15 (E–15) situated on the Ranch. The salt water was transported by pipeline from oil and gas drilling

operations participating in the Disposal System. This appeal primarily involves a statute of limitations bar of Plaintiffs' trespass and conversion claims relating to the disposal of salt water transported to E–15 by pipeline from off-site oil and gas drilling operations over a span of thirty-six years. We conclude that material issues of fact exist that mandate trial on the trespass claim and thus reverse the district court's grant of summary judgment in favor of Defendants as to that claim. We affirm the grant of summary judgment on Plaintiffs' other claims.

## BACKGROUND

{3} E–15 was drilled in 1957 by Defendants' predecessor-in-interest Pan American Petroleum Corporation (Pan American). The Ranch was owned by Will Terry. Commensurate with drilling E–15, Pan American negotiated a Property Damage Release (the Release) with Terry. The parties dispute whether the Release related only to damages from the initial construction of the well and pipelines or whether the Release also covered the disposal of the salt water on the Ranch. In 1958 Defendant Rice Engineering and Operating, Inc. took over the operation of the Disposal System and negotiated a right-of-way with Terry for pipelines that would run over and through the Ranch. *Id.* ¶ 3.

{4} When Terry died in 1968, title to the Ranch passed into a testamentary trust in which Terry's daughters, including Muriel Terry McNeill, had interests. After the daughters' deaths years later, the Ranch passed to Plaintiffs, descendants of Terry, namely, William F. McNeill and Marilyn Cates, and to the Black Trust, a trust in which certain other descendants of Terry hold an interest. Plaintiff William F. McNeill occupied the Ranch under a lease from 1993 to 1995. Plaintiffs acquired title in 1995. Plaintiffs leased the Ranch to Paige McNeill, William F. McNeill's son, in November 1997. We refer to Plaintiffs' predecessors in interest as "Predecessors" in this opinion.

{5} Plaintiffs sued Defendants on October 27, 1998. In their complaint, Plaintiffs sued Defendants for subsurface trespass caused by the disposal of the salt water into E–15 and also for injury caused by leakage from the salt water pipeline on Plaintiffs' land. In November 2000, the district court granted partial summary judgment against Plaintiffs on the disposal claim on the limited ground that "the Release unambiguously granted [Defendants] the right to dispose of off-site salt water produced into Well E–15." *Id.* ¶ 9. Trial on the leakage claim resulted in a verdict in January 2001 in favor of Plaintiffs for $70,000. Plaintiffs appealed from the partial summary judgment. This Court in April 2003 reversed on the ground that genuine issues of material fact existed in regard to the effect of the Release. *Id.* ¶ 42. The Release, which we concluded was ambiguous, is fully set out in *McNeill. See id.* ¶ 15.

{6} On remand from the *McNeill* reversal, Plaintiffs continued their trespass and conversion claims, arguing the doctrine of fraudulent concealment and the discovery rule in order to avoid the bar of the four-year statute of limitation, NMSA 1978, § 37–1–4 (1880). The district court, in November 2003, again entered a partial summary judgment. The court determined that any trespass claim for damages occurring outside the four years preceding the filing of the complaint on October 27, 1998, was barred. The court also determined that there was no evidence of fraudulent concealment or any concealment of Defendants' activities in the operation of E–15. In addition, presumably based on Defendants' defense that Plaintiffs had to be in possession of the Ranch to assert their claims, the court held that "Plaintiffs' trespass claim ends when the ranch was leased to Paige McNeill on or about November 1, 1997." The court also entered summary judgment against Plaintiffs on their conversion claim.

{7} In the partial summary judgment, the court also stated:

The Court finds an issue of material fact exists as to what was open and obvious to the previous owner(s) of the ranch and what he (they) knew, should have known or had constructive notice of regarding the operation of the E15 SWD Well. Summary Judgment is denied as to the claim of trespass.

Both parties appear to agree that the partial summary judgment disposed of the pre-October 27, 1994, claims.

{8} Following entry of this partial summary judgment, in a stipulated dismissal order, Plaintiffs released all claims and causes of action "in any way related, whether directly or indirectly, to the disposal and/or injection of produced waters in the E–15 Well from October 27, 1994 through the infinity of time." However, Plaintiffs expressly reserved their right to appeal from the court's unfavorable partial summary judgment, leaving open the possibility of pursuing claims dismissed in the partial summary judgment. Thus, the trespass claims in this case have been split into two groups based upon the date of the trespass: (1) Plaintiffs have settled with Defendants as to trespass claims arising on or after October 27, 1994 (four years prior to the filing of this suit); and (2) Plaintiffs reserved the right to appeal the district court's dismissal of any trespass claims arising prior to October 27, 1994. This is that appeal.

{9} There is no dispute that from 1958 through 2003 Defendants pumped into E–15 large amounts of salt water from oil and gas drilling operations outside the Ranch. Plaintiffs contend on appeal that this constituted a continuing trespass and continuing wrong, and through application of the doctrine of fraudulent concealment or the discovery rule that they can prove facts that would allow recovery of damages for that disposal. Plaintiffs further contend that summary judgment was improper because material facts are in dispute.

{10} In arguing that their conversion claim is viable, Plaintiffs assert Defendants intentionally failed to enter into a salt water disposal agreement with Predecessors for the disposal of the salt water. They further assert that Plaintiffs intentionally deprived Predecessors and Plaintiffs of compensation due them by exercising dominion over and converting to Defendants' own use money that was to be used to compensate Predecessors.

## DISCUSSION

### CONTENTIONS IN DETAIL

{11} Defendants assert that the single dispositive fact on appeal is that Plaintiffs acquired title to the Ranch in 1995. According to Defendants, Plaintiffs have no right to recover for tortious conduct that occurred before they acquired title. *See, e.g., Caledonian Coal Co. v. Rocky Cliff Coal Mining Co.,* 16 N.M. 517, 524, 120 P. 715, 717–18 (1911) (holding that the plaintiff seeking to recover value of coal removed from land "must show some property right or interest in the coal which is not established by possession of the land merely," since removal by trespass is "a permanent injury to the freehold, for which injury the owner of the fee is alone entitled to recover"). As a corollary, Defendants also contend that Plaintiffs are in no position to invoke the doctrine of fraudulent concealment or the discovery rule in order to escape the bar of the statute of limitations as to their claims to recover damages predating October 27, 1994, since they did not own the property until 1995.

{12} Further, Defendants assert that, even were Plaintiffs to have otherwise assertable claims, the continuing trespass theory cannot assist Plaintiffs because, under that doctrine, each injury gives rise to a new cause of action allowing a plaintiff to recover only for injuries that occurred within the statutory period. *See Valdez v. Mountain Bell Tel. Co.,* 107 N.M. 236, 239–40, 755 P.2d 80, 83–84 (Ct.App.1988) (holding causes of action for damage to home from water seepage caused by placement of utility pole in drainage ditch arose with each new, successive injury, with the statute of limitations beginning to run from the date of each injury); *Breiggar Props., L.C. v. H.E. Davis & Sons, Inc.,* 52 P.3d 1133, 1135 (Utah 2002) (involving debris dumped on land, and stating "[i]n the case of a continuing trespass or nuisance, the person injured may bring successive actions for damages until the nuisance [or trespass] is abated, even though an action based on the original wrong may be barred, but recovery is limited to actual injury suffered within the three years prior to commencement of each action" (internal quo-

tation marks and citation omitted) (alteration in original)).

{13} Defendants similarly assert that the continuing wrong theory does not assist Plaintiffs because their right to sue for installment payments commences to run from the time each installment is due. *See Plaatje v. Plaatje*, 95 N.M. 789, 790–91, 626 P.2d 1286, 1287–88 (1981) (holding cause of action based on breach of monthly obligation in divorce to pay retirement benefits accrued when each installment became due); *see also State ex rel. Pub. Employees Ret. Ass'n v. Longacre*, 2002–NMSC–033, ¶ 23, 133 N.M. 20, 59 P.3d 500 (citing *Plaatje* for the proposition that the statute of repose in *Longacre* could prevent recovery for the total amount of an obligation or liability owed without completely eliminating the right to recover where there was a "continuing wrong"). Defendants point out that even the continuing trespass cases relied on by Plaintiffs limited recovery to the statutory limitation period immediately preceding the filing of the complaint. *See United States v. Hess*, 194 F.3d 1164, 1176–77 (10th Cir.1999); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1559 (6th Cir. 1997); *City of Shawnee v. AT & T Corp.*, 910 F.Supp. 1546, 1562 (D.Kan.1995) (mem. & order).

{14} In regard to Defendants' standing-based defense that Plaintiffs cannot sue for injuries or damages occurring before they acquired title to the Ranch, Plaintiffs assert this argument was not raised in the district court and Defendants cannot raise the issue for the first time on appeal. Also, Plaintiffs contend that, if this issue is addressed, there exist genuine issues of material fact as to Plaintiffs' relationships to Predecessors and inheritance of Predecessors' rights and claims and thus Plaintiffs' right to assert claims of trespass and wrongdoing occurring during the previous ownership of the Ranch. Plaintiffs also indicate that facts in addition to these record facts would have been more fully developed to defeat Defendants' position had the issue been raised below.

{15} On the question of when the statute of limitations as to Plaintiffs' claims began to run, Plaintiffs assert that the statute did not begin to run with each disposal of salt water, but, rather, when the trespass was removed. They also assert that the statute did not begin to run as to their right to compensation until the wrong ceased, i.e., until final non-payment.

{16} Plaintiffs further assert that Defendants misunderstand Plaintiffs' continuing trespass and continuing wrong theories. Plaintiffs explain that Defendants' arguments and legal authority contemplate and address only circumstances in which trespass was open and obvious to or actually known by the party bringing suit and not continuing trespass and continuing wrong when there has been fraudulent concealment or where the discovery rule applies. Plaintiffs contend they presented evidence creating genuine issues of material fact, in that the evidence indicated Predecessors had insufficient notice and knowledge of the salt water disposal, Predecessors could not with reasonable diligence have discovered the trespass and wrong, and Defendants and their predecessor-in-interest concealed their activities. Last, Plaintiffs assert their conversion claim is viable.

{17} We first consider the preservation of the standing-based defense. We next turn to analyze the fraudulent concealment and discovery rule issues. Finally, we consider Plaintiffs' claim for conversion. We hold that Defendants did not preserve their standing-based defense. As to Plaintiffs' pre-October 27, 1994, trespass claims, we hold that the district court did not err in concluding Defendants did not fraudulently conceal their activities. However, we hold that because there exist genuine issues of material fact, Plaintiffs should be permitted to attempt to show that the discovery rule applies in trespass cases and to prove that, under the discovery rule, the statute of limitations did not begin to run until Plaintiffs knew or by the exercise of reasonable diligence should have known of the disposal complained of by them in this action. Finally, we hold that Plaintiffs' conversion claim was appropriately dismissed.

## 1. DEFENDANTS DID NOT RAISE THE DEFENSE OF STANDING BELOW

{18} In the district court, Defendants relied on the argument that Plaintiffs did not

have possession of the Ranch prior to 1993 and thus had no trespass claim before that date. This argument was essentially the same in their two motions for summary judgment. However, on appeal Defendants have abandoned that argument. Instead, Defendants argue that Plaintiffs cannot recover for trespass, continuing trespass, or continuing wrong occurring during the period before they acquired title to the Ranch. Defendants argue that Plaintiffs did not own the Ranch until 1995. Thus, Defendants argue that the district court properly granted summary judgment on Plaintiffs' pre-October 27, 1994, claims.

■ {19} Plaintiffs argue that Defendants did not preserve this argument below. We agree. All of Defendants' arguments below were addressed toward possession, not title or ownership.[1] We do not address defenses raised for the first time on appeal. Rule 12–216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"); *W. Farm Bureau Mut. Ins. Co. v. Barela,* 79 N.M. 149, 152, 441 P.2d 47, 50 (1968) (stating "in determining whether it was error to grant summary judgment, this court is limited to matters presented in the pleadings, affidavits and pre-trial depositions, and defenses cannot be invoked for the first time on appeal").

## 2. THE MERITS OF PLAINTIFFS' CONTENTIONS

### A. THE ESSENCE OF PLAINTIFFS' CASE

{20} Plaintiffs' claims at issue are those for injuries that occurred between 1958 and October 27, 1994. For survival, the claims depend on establishing a tolling and accrual that starts the statute of limitations running for all of those claims at a point in time after October 27, 1994. Plaintiffs contend they can establish that post-October 27, 1994, point through proof of continuing torts with application of the fraudulent concealment doctrine, the discovery rule, or the law that sets the accrual date as to continuing torts to

be the date of the last injury or the date the continuing tort is removed or is otherwise over and done with.

{21} Intermixed and perhaps material to both the trespass and conversion claims is Plaintiffs' contention that an oil and gas industry standard in relation to the disposal of salt water requires the party disposing of the salt water to negotiate a salt water disposal agreement with the surface owner that grants permission for the disposal. Plaintiffs state that, in the absence of such an agreement, the surface owner must be compensated. Not having obtained such an agreement, Plaintiffs contend, Defendants must pay compensation. In addition, Plaintiffs contend that at the very least, if Defendants had a right to use Plaintiffs' land, Defendants were required to exercise any right they had to use the land reasonably and an issue of fact exists as to whether Defendants exercised the right reasonably. Excessive use, Plaintiffs assert, is a trespass with or without an agreement. According to Plaintiffs, the industry standard, the violation of the standard, the concealment, the discovery, the nature (permanent, temporary, or continuing) of the trespass and wrong, the accrual date, and excessive use require resolution of genuine issues of material fact, precluding summary judgment.

### B. THE TOLLING AND FRAUDULENT CONCEALMENT ISSUES

{22} Plaintiffs contend that they presented evidence which raised factual questions of fraudulent concealment since 1958 of the disposal of salt water originating off the Ranch and Predecessors' inability by the exercise of reasonable diligence to know they had a cause of action. Plaintiffs cite to various New Mexico fraudulent concealment cases. *See Cont'l Potash, Inc. v. Freeport–McMoran, Inc.,* 115 N.M. 690, 698, 858 P.2d 66, 74 (1993) (involving contracts granting rights to explore potash deposits); *Keithley v. St. Joseph's Hosp.,* 102 N.M. 565, 569, 698 P.2d 435, 439 (Ct.App.1984) (involving medical malpractice).

---

1. In their reply brief to their first amended motion for partial summary judgment Defendants in one place used the words "owned or had posses-

sion." However, Defendants did not argue the ownership issue or cite authority in support of such an issue.

{23} As to the fraudulent concealment doctrine, we have not seen, and Plaintiffs have not pointed out, anything in the record that raises a genuine issue of material fact as to whether Defendants engaged in fraudulent concealment. The elements of fraudulent concealment include intentional misrepresentation or concealment upon which there was detrimental reliance. *See Cont'l Potash, Inc.,* 115 N.M. at 698, 858 P.2d at 74 (stating elements of fraudulent concealment). The evidence Plaintiffs presented does not give rise to reasonable inferences tending to establish these elements. The absence of any salt water disposal agreement does not suggest that Defendants intentionally concealed anything from Plaintiffs or Predecessors. And Predecessors' lack of knowledge or understanding about the nature and extent of the disposal operation suggests nothing about either Defendants' intentions or Predecessors' reliance. Those factual contentions are insufficient to create a genuine issue of material fact of fraudulent concealment on Defendants' part. On a motion for summary judgment, "the party claiming that a statute of limitation should be tolled has the burden ... to show at least a reasonable doubt as to the existence of a genuine factual issue on tolling of the statute[,]" sufficient to create reasonable doubt as to whether the statute ran as a matter of law. *Ocana v. Am. Furniture Co.,* 2004–NMSC–018, ¶ 12, 135 N.M. 539, 91 P.3d 58 (internal quotation marks and citations omitted). To avoid summary judgment, the "party opposing the motion should produce specific evidentiary facts that demonstrate a need for a trial on the merits." *Cates v. Regents of N.M. Inst. of Mining & Tech.,* 1998–NMSC–002, ¶ 24, 124 N.M. 633, 954 P.2d 65; *Collado v. City of Albuquerque,* 120 N.M. 608, 615, 904 P.2d 57, 64 (Ct.App.1995). We hold that the district court did not err in granting partial summary judgment dismissing Plaintiffs' claims that, for their success, rely on proof of fraudulent concealment.

## C. THE ACCRUAL, CONTINUING TRESPASS AND CONTINUING WRONG ISSUES

{24} Plaintiffs' continuing trespass theory is that each disposal of off-site salt water was a trespass and each new disposal was an aggravation or continuation of the trespass. Under this theory, Plaintiffs assert that the statute of limitations began to run on the date of the latest disposal, i.e., the date of the latest trespass. Plaintiffs cite various types of cases to support this contention. *See City of Shawnee,* 910 F.Supp. at 1561–62 (applying the continuing trespass doctrine to the presence of a cable transmitting pulses of information and determining that the statute of limitations did not begin to run until the trespass was removed); *Vial v. S. Cent. Bell Tel. Co.,* 423 So.2d 1233, 1236 (La.Ct.App. 1982) (applying a continuing trespass theory to misplaced conduits and manholes, and stating that "[w]here the trespass is a continuing one ... prescription does not begin to run until the offending object [conduits and manholes] is removed"); *see also Cassinos v. Union Oil Co. of Cal.,* 14 Cal.App.4th 1770, 18 Cal.Rptr.2d 574, 583 (1993) (mentioning "continuing nuisance which cannot be abated" in discussing a measure of damage in trespass case involving subsurface migration of off-site wastewater injected into an oil well); *Knight v. City of Missoula,* 252 Mont. 232, 827 P.2d 1270, 1277 (1992) (applying a continuing nuisance theory to creation, continuing use, and lack of maintenance of a road, and stating rule that where a "nuisance is of a temporary, continuing nature, the statute of limitations is tolled until the source of the injury is abated"). Plaintiffs assert further that they have shown at the very least that there exist genuine issues of material fact as to whether the trespass was continuing and as to what the date was of the last trespass.

{25} Plaintiffs' continuing wrong theory is the concept of tortious conduct causing a continuing or repeated injury which, like continuing trespass, gives rise to a cause of action that accrues when the wrong is "over and done with." They cite *Tiberi v. Cigna Corp.,* 89 F.3d 1423 (10th Cir.1996), and *Eli Lilly & Co. v. EPA,* 615 F.Supp. 811 (S.D.Ind.1985). *Tiberi* applied the continuing wrong doctrine in an action against an insurer for various torts including breach of

fiduciary duty in connection with termination of a contract. 89 F.3d at 1430. *Eli Lilly & Co.* applied the continuing wrong theory in a misappropriation of data action. *Eli Lilly & Co.* stated that "[t]he continuing wrongful conduct of the defendant toward the claimant which establishes a status quo of continuing injury may give rise to a continuing cause of action. Where the wrong is continuing, the statute of limitations does not begin to run until the wrong is over and done with." 615 F.Supp. at 822 (internal quotation marks and citations omitted). Drawing a similarity between the present case and continuing wrong cases involving contract obligations to make periodic payments, Plaintiffs contend that they can sue for all non-payments of compensation owed for each disposal of off-site salt water. They contend further that issues of fact exist as to whether the wrong was continuing, or was single with continuing effects, and as to when the wrong was completed.

{26} Barring application of the discovery rule for relief, the question is, when did the statute of limitations begin to run for pre-October 27, 1994, injuries? In applying the statute of limitations to bar Plaintiffs' claims, the district court necessarily determined either that the claims accrued upon the original trespass or that the statute began to run with respect to each new trespass as it occurred. Whichever approach taken by the district court, it must have decided that the statute ran its course before Plaintiffs filed their lawsuit. Plaintiffs contend the court erred because the statute did not begin to run until the last new trespass or wrong was over and done with or abated. This issue requires us to resolve a question of law and our review is de novo. *Hasse Contracting Co. v. KBK Fin., Inc.,* 1999–NMSC–023, ¶ 9, 127 N.M. 316, 980 P.2d 641 ("Appellate courts review matters of law de novo.").

{27} The trespass or nuisance of which Plaintiffs complain is not the E–15 structure or injury caused by the structure, but rather the injection of salt water into the subsurface. The appellate briefs do not indicate whether the flow of salt water through the pipeline and into the well was continuous or intermittent. For the purposes of the issue, however, whether the flow was continuous or intermittent is irrelevant. The question is whether the flow could have been shut off, abating the alleged trespass. *See Valdez,* 107 N.M. at 239, 755 P.2d at 83 (reciting law that "[a] permanent structure or nuisance is one that may not be readily remedied, removed or abated at a reasonable expense, or one of a durable character ... costing as much to alter as to build"). We will assume, based on the briefs, that the salt water could be shut off, although the record lacks evidence as to the cost that would have to be incurred in shutting off the flow.

{28} We therefore see the injury in the present case as continuing or temporary, not permanent, in character. *See Hess,* 194 F.3d at 1176 (stating that continuing gravel extractions over years was a continuing or temporary trespass, and not a permanent or fixed trespass); *Valdez,* 107 N.M. at 240, 755 P.2d at 84 (holding that the statute of limitations begins to run from the date of each injury where a structure causes temporary but repeated injuries, in contrast to the statute running from the date of construction where the existence of the structure itself is the injury); *Haas v. Sunset Ramblers Motorcycle Club, Inc.,* 132 Ohio App.3d 875, 726 N.E.2d 612, 613–14 (1999) (defining a permanent nuisance as a completed tortious act with injury in the absence of any further activity by the tortfeasor and defining a continuing nuisance as ongoing tortious conduct "perpetually generating new violations").

{29} Under the circumstances in this case, we reject a theory or rule requiring a holding that Plaintiffs' cause of action for thirty-six years of continuing trespass or continuing wrong did not accrue until a disposal of salt water or a failure to compensate for a disposal occurred sometime after October 27, 1994. Although it appears, as Plaintiffs show, that some jurisdictions set the cause of action accrual date for a claim for damages for all injuries from the continuing trespass to be the date of the last injury, we think the better rule to apply in the present case is one that sets the accrual date as in *Hess, Valdez,* and *Haas.* The accrual date is the date of each particular injury which, for an intermittent injury, is the date of that discrete injury, or for a continuous injury, each new day.

**56**

Thus, Plaintiffs could theoretically avoid the statute of limitations bar only if their theories of fraudulent concealment or the discovery rule can operate to provide a date of accrual after October 27, 1994. Having held that Plaintiffs cannot rely on the doctrine of fraudulent concealment, they have only the discovery rule to advance. Therefore, unless Plaintiffs are able to apply the discovery rule to extend the date of accrual to after October 27, 1994, the district court did not err in granting partial summary judgment dismissing Plaintiffs' claims that, for their success, rely on proving a cause of action accrual date after October 27, 1994. We now turn to the discovery rule.

### D. UNDER THE DISCOVERY RULE, WHETHER ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT AS TO THE ACCRUAL DATE OF PLAINTIFFS' TRESPASS CLAIM

{30} Plaintiffs contend, citing various New Mexico discovery rule cases, that their evidence showed a continuing trespass, that they and their Predecessors were unable to discover, did not know, and with reasonable diligence could not have known of, the injury and the cause. *See Roberts v. Sw. Cmty. Health Servs.*, 114 N.M. 248, 257, 837 P.2d 442, 451 (1992) (involving medical malpractice); *Martinez–Sandoval v. Kirsch*, 118 N.M. 616, 620–21, 884 P.2d 507, 511–12 (Ct. App.1994) (involving sexual abuse by priest); *see also Apodaca v. Unknown Heirs*, 98 N.M. 620, 624, 651 P.2d 1264, 1268 (1982) (reciting the discovery provisions in NMSA 1978, § 37–1–7 (1880), that "[i]n actions for injuries to, or conversion of, property, the cause of action shall not be deemed to have accrued until the injury or conversion complained of shall have been discovered by the party aggrieved"). Applying the discovery rule, Plaintiffs assert that their evidence created genuine issues of material fact. Under the discovery rule, "the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." *Williams v. Stewart*, 2005–NMCA–061, ¶ 12, 137 N.M. 420, 112 P.3d 281 (internal quotation marks and citation omitted).

■ {31} Defendants sought summary judgment essentially based on several documents and affidavits regarding the documents. The documents collectively gave rise to an inference that Predecessors knew or reasonably could have discovered that the Disposal System involved transfer of salt water to E–15 from outside the Ranch's boundaries. In addition to the documentary evidence, Defendants presented an affidavit of the president of Rice Operating Company, Loy Goodheart. Goodheart, who was a field engineer with Rice Engineering in 1958, discussed how substantial the construction and installation of the Disposal System was and that it took about two years to complete. Pipelines were first laid out and then were buried. Goodheart stated that because the pipes were laid out beyond the boundaries of the Ranch, "the Terrys could see the construction of the disposal system went from beyond and through the boundary of their property." At no time did Predecessors object to the pipelines for E–15 gathering salt water from beyond the boundaries of the Ranch or take legal action to halt disposal or seek compensation on a per barrel basis.

{32} In opposition to Defendants' motion for summary judgment, Plaintiffs relied on the Release, under which salt water disposal would take place only if "production is encountered on the above described lands," and that the Release excluded "right-of-ways for salt water gathering system beyond the boundaries of this Trust," thereby, according to Plaintiffs, leading one to believe that no off-site salt water would be pumped into the Ranch. Plaintiffs further relied on an affidavit of Plaintiff William F. McNeill stating the following material facts:

4. I know that neither my grandparents nor my parents understood the nature and extent of the salt water disposal operations that were conducted on this property. From my earliest years growing up on the ranch (I was born on the ranch in 1943), I knew that there were numerous pipelines, tank batteries and other numerous miscellaneous items of equipment located on the ranch that had to do with oil and gas production. None of these were labeled with respect to their function or purpose.

There was no way to distinguish without specifically researching into the subject as to which pipes were being used for production, transport or disposal of oil, gas, or waste materials. In most instances the pipes that appeared above ground were only a small portion of what I presumed would be the total amount of pipe buried under the ground.

5. Neither my grandparents nor my parents had any knowledge that the Defendants were disposing of millions of barrels of produced water a year through the E–15 Well. In fact they did not know that salt water disposal operations of this or any magnitude were taking place in that Well. There is no record that I can find to show that the Defendants or their predecessors sought or obtained my families' permission to pump millions of barrels of liquid waste into our land for as long as they chose to do so without any compensation.

6. I discovered the true nature of what the Defendants were doing with the E–15 Well in 1995 when I discovered liquid waste dumped onto our property at the site. When I contacted the Defendants to ask what permission they had to do this, I was told they didn't need any permission. This event caused me to start looking into the situation. I was surprised and somewhat shocked when my investigation revealed that the Defendants had been disposing of (and presumably being paid for) almost unlimited amounts of liquid waste into our property without ever obtaining my families' permission to do so or ever compensating us for the damages incurred as a result of these operations.

{33} Plaintiffs also relied on an affidavit of their expert, Ronald Britton, which stated that while certain portions of the Disposal System are visible, "[a] good portion of the system exists underground" and the function of the valves, pipes, and other bits of equipment that are above ground is not open and obvious to the untrained eye. The affidavit also states that disposal systems are not open and obvious in any way, shape, or form. In addition, the affidavit states that there is no readily apparent means for lay people to

know, from looking at the various above ground components that the system was being used to dispose of off-site salt water.

{34} Further, the Britton affidavit stated that the standard oil and gas industry practice required owners and operators of salt water disposal systems to obtain the consent of the surface owner through an agreement compensating surface owners for the right to dispose of the salt water into the land. The affidavit further stated that, under industry practice, without such an agreement an operator of a salt water disposal system would be in violation of the standard. These facts are corroborated in an affidavit of Jim Pierce, who indicated he was a "petroleum land man" and expert in petroleum land management.

{35} Plaintiffs also showed that Defendants had disposed of over sixty-six million barrels of salt water in E–15. They further showed that Defendants had separate salt water disposal agreements with other property owners, including Plaintiffs, and had paid others, for other disposal wells in the salt water system. In their answer brief, Defendants do not state where, if at all, they contended or the district court ruled that any affidavit statement was unworthy of consideration.

{36} If Plaintiffs were able, through application of the discovery rule, to prove a post-October 27, 1994, accrual date for claims for injury occurring from 1958, then Plaintiffs' October 27, 1998, lawsuit could not be barred under the four-year statute of limitations. We do not see where Defendants dispute this in their answer brief. Rather, Defendants' position is that, because of their lack of ownership of the Ranch until 1995, Plaintiffs had no claims until 1995 that could even be affected by a statute of limitations. It appears to us that there exist genuine issues of material fact as to whether the statute of limitations was tolled under the discovery rule.

{37} Assuming Plaintiffs can prove their tort claims and facts to support their tolling contention, the factual issues involve, at the very least, whether Predecessors, and Plaintiffs too, knew or by the exercise of reasonable diligence should have discovered before

October 27, 1994, that Defendants were using E–15 for the disposal of salt water. Further, nothing seems to have been developed below as to whether excessive reinjection of salt water into E–15 occurred and, if it did occur, whether it constituted a trespass or other tort and whether Predecessors or Plaintiffs knew or should have known of this activity.

{38} Summary judgment is inappropriate where there are genuine issues of material fact. *See* Rule 1–056(C) NMRA; *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "We construe reasonable doubts as to the existence of a genuine factual dispute in the nonmovant's favor." *Rivera v. Trujillo*, 1999–NMCA–129, ¶ 7, 128 N.M. 106, 990 P.2d 219. "Summary judgment is an extreme remedy that should be imposed with caution." *Ocana*, 2004–NMSC–018, ¶ 22, 135 N.M. 539, 91 P.3d 58. "If there is the slightest doubt as to the existence of material factual issues, summary judgment should be denied." *Id.* (internal quotations marks and citation omitted).

{39} Defendants can hardly be heard to complain in regard to this determination. Nowhere in their answer brief on appeal do they answer Plaintiffs' contentions as to the existence of genuine issues of material fact. Defendants rely solely on positions that Plaintiffs have no assertable claims because they did not acquire title until 1995 and that the "continuing" elements of the trespass and wrong theories were inapplicable.

{40} We get the impression from the two judgments issued by the district court that the court sees no basis on which Predecessors and Plaintiffs could not have been aware from 1958 to October 1994 that E–15 was being used for off-site salt water disposal. The ultimate outcome in this case may well be either that Predecessors or Plaintiffs knew of or should have discovered the disposal, or that Plaintiffs are unable to satisfy their burden to prove the opposite. However, Plaintiffs' evidence before the district court at the time of the partial summary judgment created genuine issues of material fact on the question of discovery. The court cannot look down the line and short circuit the result where such fact issues are presented.

## E. CONVERSION ISSUE

{41} Plaintiffs claim that Defendants were paid money from participants in the Disposal System; that money Defendants were paid by participants in the Disposal System was owed to Plaintiffs but converted or diverted away from Plaintiffs; that Defendants took and kept money from Plaintiffs that belonged to Plaintiffs; that Defendants' use of E–15 brought Defendants enormous profits; that Defendants never obtained a salt water disposal agreement from Plaintiffs or Predecessors; and that Defendants intentionally deprived Plaintiffs of compensation Defendants owed Plaintiffs for the use of the land.

{42} Plaintiffs do not point to any factual basis in the record to support their claim that money paid to Defendants by participants in the Disposal System was earmarked for or even somehow indirectly owed to persons whose land Defendants used to dispose of salt water, including Plaintiffs and Predecessors. Nor do Plaintiffs point to any facts in the record to support any sort of legal duty on the part of Defendants to turn over or redirect funds it received from disposal operations to persons whose lands were used for disposal, including Plaintiffs and Predecessors.

{43} Moreover, Plaintiffs cite no legal authority applicable to the contentions they present. Plaintiffs cite general conversion law. *See Nosker v. Trinity Land Co.*, 107 N.M. 333, 338, 757 P.2d 803, 808 (Ct.App. 1988). General conversion law does not fit. Plaintiffs have presented no evidence indicating a right to possession of the money they claim. *See id.* Nor have they presented evidence indicating an unlawful exercise of dominion and control over money belonging to Plaintiffs in defiance or exclusion of Plaintiffs' rights as owner. *See id.* Plaintiffs' claim is little more than an assertion of an intentional design and refusal to pay money for the use of Plaintiffs' land, more akin to a claim for unjust enrichment. The claim does not fit under traditional conversion theory and Plaintiffs provide no remotely persuasive legal authority in support of their claim. We

conclude that summary judgment was properly granted on Plaintiffs' conversion claim.

## CONCLUSION

{44} We reverse the district court's grant of partial summary judgment dismissing Plaintiffs' trespass claims for pre-October 27, 1994, injury to the Ranch, insofar as the dismissal precluded a trial on the issue of whether, under the discovery rule, Plaintiffs' trespass cause of action did not accrue and the statute of limitations as to Plaintiffs' trespass claim did not begin to run until a date after October 27, 1994. Nothing in this opinion is intended to preclude Defendants from asserting lack of standing on remand based on alleged lack of ownership. We affirm summary judgment as to all other claims that the judgment dismissed.

{45} **IT IS SO ORDERED.**

ALARID and FRY, JJ., concur.