This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**BONNIE SUE TOMLINSON and**
**JACK BURKETT,**

Plaintiffs-Appellees,

**vs.**                                        No. A-1-CA-35610

**BILL BURKETT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna Mowrer, District Judge**

Barnett Law Firm, P.A.
Colin Hunter
Albuquerque, NM

for Appellees

Eric D. Dixon Attorney and Counselor at Law, P.A.
Eric D. Dixon
Portales, NM

for Appellant

## MEMORANDUM OPINION

**KIEHNE, Judge.**

**{1}** Defendant Bill Burkett appeals from a jury verdict against him for fraud and conversion arising out of his misuse of a home equity line of credit taken out by him and his siblings, Plaintiffs Bonnie Sue Tomlinson and Jack Burkett. Defendant raises seven issues on appeal. He claims the district court erred by (1) finding that he waived his statute of limitations defense; (2) excluding his accounting report; (3) allowing Plaintiffs to question Defendant's credibility and (4) allowing Plaintiffs double recovery for damages. He also claims that there was insufficient evidence to support (1) Plaintiffs' claims for conversion and fraud; and (2) the jury's punitive damages award. He further argues that the punitive damages award was unconstitutionally excessive. Concluding that the district court did not err, we affirm the judgment.

**BACKGROUND**

**{2}** Defendant acted as personal representative of the estates of the parties' mother, Jewell Juanita Burkett, and of Jerry Don Burkett, the parties' brother. Before she died, Ms. Burkett conveyed her real properties to the parties (and to Jerry Don Burkett, before his death) as tenants in common, some of which were in desperate need of repair.

**{3}** To secure funds needed to prepare the properties for sale and to pay expenses of the estates, the parties agreed to take out a line of credit for $120,000, secured by one of the properties held by the parties as tenants in common, and each of the parties

agreed to be personally responsible for repayment of the line of credit in the event of a default. Plaintiffs entrusted Defendant to use the line of credit to pay property taxes, prepare the properties for sale, pay off the debts of Jerry Don Burkett's estate, and take care of some automobiles, because Defendant was the personal representative, and Plaintiff Tomlinson thought he was best suited to handle these matters. Importantly, the parties intended to use the funds to demolish a building on one of the properties that had been condemned by the City of Portales so that the property could be sold. The parties agreed that Defendant should be reimbursed for any expenses he incurred in preparing the estates for closing, including travel expenses, because he lived in Baird, Texas and would have to travel to Portales, New Mexico.

{4}     Plaintiff Tomlinson first learned that Defendant was not using the line of credit for its intended purposes when Dan Price, a man who had been hired to demolish the dilapidated building in Portales, filed a lawsuit against Plaintiffs and Defendant alleging that he had not been paid for his services. Plaintiff Tomlinson chose to settle the lawsuit by personally paying Mr. Price $12,500, without discussing it with Defendant, because she felt it would be less expensive than litigating the case. Plaintiffs then sued Defendant for fraud and conversion, alleging that he had misused the line of credit, and had improperly retained proceeds from the sale of one of Jerry Don Burkett's properties. Plaintiffs sought removal of Defendant as personal

4

representative of the estates. The district court removed Defendant and appointed a local attorney to act as personal representative.

{5} The evidence at trial was that the Defendant wrote checks to himself from the line of credit or made transfers from the line of credit to his own bank account; indeed, no payments were made from the line of credit to anyone other than Defendant. Defendant argued that he was reimbursing himself for expenses that he had personally paid on behalf of the estates, and that the parties had agreed to this arrangement, but Plaintiff Tomlinson testified that Defendant never provided her with information to support the reimbursements. Defendant never produced any cancelled checks, receipts, or invoices to support his claim that he had used the funds to pay for expenses of the estates. Plaintiff Tomlinson testified that she had to pay approximately $133,000 in estate expenses from her own pocket because of Defendant's misuse of the line of credit. These expenses included paying property taxes for the years 2006 through 2012, as well as repairs, maintenance, and miscellaneous expenses for the properties, all of which should have been paid for with the line of credit. Additionally, Plaintiff Tomlinson paid a debt of Jerry Don Burkett's estate using a loan from her 401(k) account, even though the line of credit was supposed to be used for that debt as well. Plaintiff Tomlinson also personally paid interest on the line of credit at Defendant's direction.

{6}     The jury found Defendant liable for both fraud and conversion. It awarded Plaintiff Tomlinson $84,447 in compensatory damages for fraud, $94,553 in compensatory damages for conversion, $90,000 in punitive damages for fraud, and $90,000 in punitive damages for conversion. It awarded nothing to Plaintiff Burkett.

{7}     Additional facts will be set forth as necessary to consider each of the issues that Defendant raises on appeal.

**DISCUSSION**

**A.     Defendant's statute of limitations defense was not timely raised**

{8}     Defendant first argues that this case was barred by the four-year statute of limitations applicable to Plaintiffs' claims, and that the district court erred by ruling that he had waived this defense. *See* NMSA 1978, § 37-1-4 (1880) (establishing a four-year statute of limitations for conversion and fraud claims). Defendant argues that his statute of limitations claim presents a question of law that we should review de novo, but we review a district court's decision to allow or disallow amendment of the pleadings to assert a statute of limitations defense for an abuse of discretion. *See Chavez v. Kitsch*, 1962-NMSC-122, ¶ 12, 70 N.M. 439, 374 P.2d 497.

{9}     Though Defendant did not assert the statute of limitations as an affirmative defense in his answer to the complaint, he argues that he implicitly asserted the defense by including in his answer the defense of failure to state a claim upon which

6

relief could be granted. Defendant also argues that the district court erred by concluding that he had waived the defense, and by declining to allow him to amend the pleadings, because at trial he questioned Plaintiffs about when they became aware of their causes of action without objection by Plaintiffs' counsel, offered a jury instruction on the defense, moved for a directed verdict, and asserted the defense in a post-trial motion.

{10} The complaint was filed on September 15, 2011. Defendant argues that it was untimely because Plaintiffs supposedly became aware of their cause of action on August 17, 2007, when Defendant and Plaintiff Tomlinson were visiting Plaintiff Burkett, who was then incarcerated at the Roswell Correctional Facility, and an argument ensued during which Plaintiff Burkett allegedly stated "[j]ust as I suspected, you're stealing everything."

{11} We first address Defendant's argument that although he failed to assert a statute of limitations defense in his answer to the complaint, that defense was somehow implicitly encompassed within his defense of failure to state a claim, which he did assert in his answer. Defendant, however, cites no authority for the proposition that asserting the affirmative defense of failure to state a claim is sufficient to preserve a statute of limitations defense, and therefore this claim is waived because we do not consider arguments that are unsupported by authority. *See In re Adoption of Doe*,

7

1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Further, Rule 1-008(C) NMRA identifies the statute of limitations defense as one that a defendant is required to explicitly assert in his or her answer, and Defendant's argument that asserting a failure to state a claim defense sufficiently preserved his statute of limitations defense therefore lacks merit.

{12} Defendant actually raised the statute of limitations issue for the first time at trial, proposing an instruction on the defense during a jury instruction conference held before the close of Plaintiffs' case in chief. Plaintiff Burkett had not yet finished testifying, and Defendant would not disclose the factual basis of his statute of limitations defense to the district court, because he feared that doing so would change Plaintiff Burkett's testimony. Plaintiffs' counsel objected, arguing that the issue should not have been "sprung on in a last-second jury instruction." The district court did not rule on the issue until after the close of Plaintiffs' case, when Defendant moved for a directed verdict based on the statute of limitations. Plaintiffs opposed the motion, arguing, among other things, that Defendant had waived the defense by not including it in his answer. The district court held that the defense was waived and had not been tried with Plaintiffs' consent. In a post-trial motion, Defendant asked to amend the pleadings to include his statute of limitations defense. The district court denied the motion, finding that the issue of the statute of limitations had not been tried

8

by the express or implied consent of the parties because Plaintiffs had objected to it.

**{13}** A statute of limitations defense is waived unless asserted in the answer to a complaint, but the defense can be revived if the district court grants a motion to amend the answer, allowing a party to plead the defense. *Chavez*, 1962-NMSC-122, ¶¶ 10, 13. We note that under Rule 1-015(A) NMRA, leave to amend the pleadings should "be freely given when justice requires." "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 1-015(B). If an issue is tried by consent, the pleadings may be amended to conform to the evidence even after judgment. *See id.*

**{14}** Defendant argues that the statute of limitations defense was tried by the implied and express consent of the parties, because he questioned Plaintiffs, without objection from Plaintiffs' counsel, about when they knew or suspected that Defendant was not using the line of credit properly. But questioning Plaintiffs about when they became aware of the potential misuse of funds was not sufficient to try the issue "by the express or implied consent of parties." Rule 1-015(B). Rather, an issue not raised in the pleadings is tried by the consent of the parties "[w]hen a party does not object to the trial court's consideration of an issue not raised in the pleadings and the court rules

on that issue[.]" *Turner v. Bassett*, 2003-NMCA-136, ¶ 32, 134 N.M. 621, 81 P.3d 564, *rev'd on other grounds*, 2005-NMSC-009, ¶ 1, 137 N.M. 381, 111 P.3d 701. Here, Plaintiffs objected when Defendant proposed a jury instruction raising the statute of limitations defense on the third day of trial, and opposed Plaintiffs' motion for directed verdict on waiver grounds. Accordingly, the matter was not tried with Plaintiffs' consent.

{15}    Indeed, Plaintiffs may not have even been aware, based on defense counsel's cross-examination, that Defendant was attempting to establish a statute of limitations defense that had never been raised before trial. To reverse the district court under these circumstances would "encourage sandbagging and gamesmanship" among litigants. *State v. Nguyen*, 2008-NMCA-073, ¶ 22, 144 N.M. 197, 185 P.3d 368 (noting that this Court will not permit a course of conduct that "encourage[s] sandbagging and gamesmanship"). The district court properly ruled that Defendant did not timely assert the affirmative defense of the statute of limitations, and properly denied Defendant's post-trial motion. *See Chavez*, 1962-NMSC-122, ¶ 13.

**B.    The district court did not abuse its discretion by precluding Defendant, as a discovery sanction, from using an accounting report at trial**

{16}    Defendant next argues that the district court abused its discretion by precluding him from using at trial a 102-page, mostly-handwritten accounting report that Defendant wrote in an effort to prove that he used the line of credit properly.

10

Defendant, however, does not explain how the district court's order prejudiced him, and we therefore affirm the district court's ruling.

{17} We review Defendant's claim that the district court improperly imposed discovery sanctions for an abuse of discretion. *See Enriquez v. Cochran*, 1998-NMCA-157, ¶ 20, 126 N.M. 196, 967 P.2d 1136. Accordingly, "we consider the full record to determine whether the [district] court's decision is without logic or reason, or clearly unable to be defended." *Id.* "[T]he nature of the conduct and level of culpability" must be considered, "and whether the [district] court's sanction appears more stern than necessary." *Id.* The district court's findings must be "supported by substantial evidence[,]" because the district court's decision is based upon "conclusions about a party's conduct and intent[.]" *Id.*

{18} During the discovery phase of this case, Plaintiffs were dissatisfied with Defendant's discovery responses, which generally declined to provide any information about how he had spent the line of credit, and thus they filed a motion to compel. At the hearing on the motion, Defendant, who was pro se at the time, produced a largely handwritten report over one hundred pages long, which was titled "Report of Accounting Methods and Progress," and stated that it contained information responsive to Plaintiffs' discovery requests.[1] The district court ordered Defendant to

---

[1]We note that pro se litigants are "held to the same standard of conduct and compliance with court rules, procedures, and orders as are members of the bar."

11

file the report with the district court clerk, to identify the pages of the report that were responsive to Plaintiffs' discovery requests, and to produce all necessary supporting documentation for the report, including cancelled checks, receipts, bank statements, and other documents he relied on to compile the report. Defendant filed the report. He did not, however, comply with the order's other directives. The district court entered an order finding that Defendant had "ignored the [c]ourt's order," and as a sanction it precluded him from using the report at trial.

**{19}** Defendant now argues that the district court's order was error, but he does not argue, much less attempt to show, that he was prejudiced by the exclusion of the accounting report. Defendant does not explain what information the report contained, or how it would have rebutted Plaintiffs' claims. Evidently, Defendant would like this Court to read the 102-page report, attempt to understand what it means, and then figure out whether, and how, it might have been useful to him at trial. We decline to do defense counsel's work for him. Because Defendant has failed to show how he was prejudiced by the exclusion of the accounting report, we will not consider this claim on appeal. *State v. Urioste,* 2011-NMCA-121, ¶ 29, 267 P.3d 920 ("[T]his Court's policy is to refrain from reviewing unclear or underdeveloped arguments [that] require

*Newsome v. Farer*, 1985-NMSC-096, ¶ 18, 103 N.M. 415, 708 P.2d 327. Defendant does not argue that his pro se status should affect our ruling on this issue.

12

usto guess at what [a party's] arguments might be[.]" (internal quotation marks and citation omitted)). Therefore, we affirm the district court's order excluding the report.

**C.   Defendant's substantial evidence challenge to the conversion judgment is waived because it is not adequately developed**

{20}   Defendant next argues that the judgment for conversion was not supported by substantial evidence. We reject this claim.

{21}   In reviewing Defendant's substantial evidence challenge to the conversion and fraud claims, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "Additionally we will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder." *Id.* "In accordance with the standard of review, when considering a claim of insufficiency of the evidence, the appellate court resolves all disputes of facts in favor of the successful party and indulges all reasonable inferences in support of the prevailing party." *Id.*

{22}   Defendant argues that a party may not convert funds that he owns, but fails to develop this argument by providing any supporting authority, and thus we need not consider it. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2. However, we note that the theories of conversion presented to the jury did not require Plaintiffs to have

*exclusive* ownership of the funds, nor do they state that a person cannot be liable for conversion if he is a part owner of the funds at issue.

**{23}** Defendant next argues that the tort of conversion applies only to items of tangible personal property, not to loan proceeds. Defendant correctly cites the common-law rule that "the action for conversion would lie only for interference with rights in tangible personal property." Dan B. Dobbs et. al., *Dobbs' Law of Torts* § 709 (2d ed. 2018). We have not found any New Mexico cases that addresses whether conversion applies only to tangible items of personal property. We acknowledge that several New Mexico cases define the tort of conversion as involving the wrongful possession or use of "chattels," but none of these cases had occasion to decide whether the tort should be limited to tangible personal property. *See Muncey v. Eyeglass World, LLC*, 2012-NMCA-120, ¶ 22, 289 P.3d 1255 (citing a similar definition of conversion in a case arising out of the copying of paper medical charts); *Nosker v. Trinity Land, Co.*, 1988-NMCA-035, ¶¶ 14-16, 107 N.M. 333, 757 P.2d 803 (discussing conversion in a case arising out of the possession of irrigation equipment); *Newman v. Basin Motor Co.*, 1982-NMCA-074, ¶¶ 1, 16, 98 N.M. 39, 644 P.2d 553 (stating that conversion involves chattels, but only considering whether a trailer was converted); *Aragon v. Gen. Elec. Credit Corp.*, 1976-NMCA-099, ¶ 13, 89 N.M. 723, 557 P.2d 572 (discussing the conversion of a check); *Taylor v. McBee*, 1967-NMCA-

015, ¶¶ 6, 21, 78 N.M. 503, 433 P.2d 88 (defining "conversion" as the "wrongful possession of, or the exercise of dominion over, a chattel" in a case involving the claimed conversion of paper medical charts). However, "cases are not authority for propositions not considered[,]" and these cases do not directly address the question that Defendant raises in this case. *Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 (internal quotation marks and citation omitted).

**{24}** Morever, Defendant has failed to cite to several New Mexico cases that have upheld judgments for conversion in situations involving loan proceeds or specifically-identifiable amounts of money. *See In re Venie*, 2017-NMSC-018, ¶ 36, 395 P.3d 516 (holding that the attorney converted funds by placing them in his own bank account despite being authorized to use those funds solely to obtain a bail bond); *In re Yalkut*, 2008-NMSC-009, ¶ 25, 143 N.M. 387, 176 P.3d 1119 (stating that conversion may occur when fees intended to be deposited in a trust account are intentionally commingled with the attorney's personal account, but holding that the respondent did not act dishonestly); *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 18, 140 N.M. 478, 143 P.3d 717 (affirming a jury award for the conversion of $9,500 of loan proceeds); *Case Credit Corp. v. Portales Nat'l Bank*, 1998-NMSC-035, ¶¶ 7-10,126 N.M. 89, 966 P.2d 1172 (applying the tort of conversion to funds connected

with the sale of property); *Apodaca v. Unknown Heirs of the Tome Land Grant*, 1982-NMSC-100, ¶ 15, 98 N.M. 620, 651 P.2d 1264 (holding that the proceeds from a sale of land were converted); *McNeill v. Rice Eng'g & Operating, Inc.*, 2006-NMCA-015, ¶ 42, 139 N.M. 48, 128 P.3d 476 (holding that the plaintiffs should have demonstrated that funds were "earmarked" for a specific purpose to support a claim for conversion). We also note that other jurisdictions have stated as a general rule that although money, which is intangible, cannot be subject to a claim for conversion, there is an exception to this rule for funds that are "specific segregated or identifiable funds." *Lasater v. Guttmann*, 5 A.3d 79, 88 (Md. Ct. Spec. App. 2010) (internal quotation marks and citation omitted); *see Rhino Fund LLLP v. Hutchins*, 215 P.3d 1186 (Colo. App. 2008) ("An action will lie for the conversion of money where there is an obligation to return *or otherwise particularly treat specific money*." (emphasis added)).

**{25}** We do not, however, need to resolve whether the common-law rule of conversion applies, or whether the tort applies to loan proceeds or specifically-identifiable funds, because Defendant has failed to adequately develop this argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to review a party's undeveloped argument). Defendant fails to explain why New Mexico should adhere to the common-law rule, and does not explain how we could do so without ignoring our Supreme Court's decisions, and our

16

own precedents, which have repeatedly upheld judgments for conversion of loan proceeds and specifically-identifiable amounts of money. We decline to construct an argument for Defendant, and thus we decline to consider this claim.

**D.     Defendant's claim that substantial evidence did not support the fraud judgment is waived**

{26}     Defendant next claims that the fraud judgment is not supported by substantial evidence. But Defendant fails to cite evidence supporting the verdict in his brief in chief, and his failure to do so results in a waiver of this claim. *See* Rule 12-318(A)(4) NMRA ("A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]").

{27}     The jury was instructed on Plaintiffs' claim of fraud as follows:

> To establish [f]raud on the part of Defendant, Plaintiffs have the burden of proving each of the following:
>
> First, a representation of fact was made by Defendant, which was not true;
>
> Second, either the falsity of the representation was known to the party making it or that the representation was recklessly made;
>
> Third, the representation made was made with the intent to deceive and to induce Plaintiffs to rely on the misrepresentation; and
>
> Fourth, Plaintiffs did in fact rely on the representation.

17

Each of these elements must be proved by clear and convincing evidence.

The Plaintiffs have the burden of proving that the Fraud was a cause of the damages.

*See* UJI 13-1633 NMRA

{28} Defendant argues that the only misrepresentation that Plaintiffs attempted to prove at trial was that Defendant did not inform Plaintiff Tomlinson of the correct price for the demolition of the dilapidated building. This is incorrect, as Plaintiffs also presented evidence that Defendant had promised that he would use the line of credit to take care of various tasks for the estates, that Plaintiffs relied on his promise and trusted him, that he could not account for approximately $140,000-$150,000 of the line of credit, and that Plaintiff Tomlinson personally had to pay the property taxes and for the repairs that Defendant was supposed to cover with the line of credit. The basis for Plaintiffs' fraud claim was not simply that Defendant misrepresented the cost to demolish the building, but that Defendant represented that he was using the money to prepare the properties for sale, but never completed the tasks and was unable to account for the money that he took from the line of credit and transferred to his own bank account. Because Defendant failed to alert this Court to the existence of this evidence in his brief in chief, we hold that his substantial evidence claim is waived.

18

**E. Defendant's claim that the district court improperly allowed Plaintiffs a double recovery for fraud and conversion is waived as undeveloped**

{29} Defendant argues that it was improper for the district court to enter a judgment awarding damages for both fraud and conversion because it resulted in a double recovery for Plaintiffs. Defendant's argument, however, is inadequately developed, and therefore we decline to consider it. *See Headley*, 2005-NMCA-045, ¶ 15 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). Though Defendant accurately cites a laundry list of cases holding that New Mexico does not allow a plaintiff a double recovery of damages, Defendant fails to explain how the judgment in this case awarded a double recovery to Plaintiffs. Defendant evidently expects this Court to sift through the trial testimony and exhibits, and determine whether Plaintiffs received a double recovery. Again, we decline to do defense counsel's work for him. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. . . . This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments.") (citations omitted). Accordingly, we reject this claim.

19

**F.** **It was not error for the district court to admit evidence of Defendant's admission of lying**

{30}    In 2004, Defendant achieved national prominence by providing documents to CBS News that were critical of then-President George W. Bush's service in the Texas National Guard during the 1970s, apparently in an effort to damage President Bush's reelection prospects. *See* Wikipedia, *Killian documents controversy*, https://en.wikipedia.org/wiki/Killian_documents_controversy (last visited June 18, 2018 at 3:30 p.m.). After CBS News aired a report in September 2004 based on the documents, their authenticity was challenged. *Id.* CBS News eventually admitted it could not authenticate the documents and apologized for running the story. *Id.* Defendant later admitted, in a nationally-televised interview with CBS News anchor Dan Rather, that he had lied about where he obtained the documents. The exchange was as follows:

Rather:    But you did mislead us?

[Defendant]:Yes I misled. Yes I did.

Rather:    You lied to us. Why would I or anyone believe that you wouldn't mislead us about something else?

[Defendant]:I could understand that question. I can. That's gonna have to be your judgment and anybody else's.

{31}    Defendant now claims that the district court abused its discretion by allowing Plaintiffs to introduce evidence of this admission at trial. The district court allowed

20

Plaintiffs' counsel to cross-examine Defendant about the admission of lying, but declined to allow the entire conversation between Defendant and Mr. Rather to be read to the jury. Defendant argues that the district court should not have allowed Defendant to be cross-examined with the statement because it was irrelevant and not proper impeachment evidence under Rule 11-404(B) NMRA and Rule 11-608 NMRA. Defendant further argues that the evidence was unduly inflammatory, unfairly prejudicial, confused the issues and was misleading to the jury contrary to Rule 11-403 NMRA. "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

{32} We note that "the inadmissibility of evidence under one rule of evidence does not preclude the admissibility of the evidence for another purpose under another rule." *State v. Patterson*, 2017-NMCA-045, ¶ 9, 395 P.3d 543. Because we hold that the evidence was admissible under Rule 11-608, we do not address whether the evidence would be inadmissible under Rule 11-404(B).

{33} Rule 11-608(B)(1) states that "[e]xcept for a criminal conviction under Rule 11-609 NMRA, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are

probative of the character for truthfulness of . . . the witness[.]" This Court recently stated "Rule 11-608(B)(1) permits cross-examination of a witness about a specific incident or act that is probative of his or her character for truthfulness." *Patterson*, 2017-NMCA-045, ¶ 10. In *Patterson*, this Court cited *United States v. Bocra*, 623 F.2d 281, 288 (3d. Cir. 1980), which stated that "[t]he classic example of a permissible inquiry [under Federal Rule of Evidence 608(b)] would be an incident in which the witness had lied." *Patterson*, 2017-NMCA-045, ¶ 10 (internal quotation marks and citation omitted).

{34} In this case, the evidence that Defendant lied to Mr. Rather was probative of his character for truthfulness, and the district court did not abuse its discretion in admitting it. Here, given Defendant's failure to provide any documentary evidence supporting his claim that he spent the line-of-credit funds properly, his credibility was of critical importance at trial. It was entirely appropriate to allow the jury to consider evidence that Defendant had lied in an effort to improperly influence the result of a United States presidential election. The jury was entitled to consider whether Defendant, having lied about a matter of national importance, would also lie to protect himself from personal liability. The district court properly limited the inquiry into the topic by excluding extrinsic evidence, but allowing cross-examination. *See* Rule 11-608(B)(1).

{35} Finally, Defendant argues that this evidence was irrelevant, unduly inflammatory, unfairly prejudicial, confusing of the issues and misleading to the jury because the interview was ten years old, and involved events that occurred in the 1970s. Defendant does not explain what was confusing about the inquiry, or why the interview was less relevant because of its age, and thus we will not consider these arguments. *See Headley*, 2005-NMCA-045, ¶ 15 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). Evidence of Defendant's willingness to lie on a grand scale about matters of importance to the country as a whole was highly probative of his credibility, where the only evidence supporting Defendant's case was his own testimony. Accordingly, the danger of unfair prejudice, if any, did not outweigh the probative value of the evidence. *See* Rule 11-403. Defendant's evidentiary claim is without merit.

**G. Defendant did not preserve or adequately develop his claims that the jury's punitive damages awards were not supported by substantial evidence or were unconstitutionally excessive**

{36} Defendant argues that substantial evidence did not support the jury's punitive damages awards because he acted negligently "at best," but did not act maliciously, intentionally, fraudulently, or with a wanton disregard of Plaintiffs' rights. Defendant also argues that the awards were unconstitutionally excessive.

{37} The district court found that Defendant's similar arguments regarding his culpable mental state for punitive damages, made in his post-judgment motion, were not fully developed and accordingly denied the motion. Defendant does not specifically challenge the district court's ruling that his argument was undeveloped, and thus has waived this issue for appellate review. *See* Rule 12-318(A)(4) NMRA ("The argument shall set forth a specific attack on any finding, or the finding shall be deemed conclusive."); *see also N.M. State Inv. Council v. Weinstein*, 2016-NMCA-069, ¶¶ 39, 61, 382 P.3d 923 (holding that a party's argument is waived when it fails to specifically challenge the district court's ruling, and applying Rule 12-213(A)(4) NMRA to a district court's findings of fact and conclusions).

{38} Even if these claims had not been waived in the district court, Defendant fails to acknowledge the abundant evidence supporting the verdict imposing punitive damages, much less explain why that evidence was insufficient to support it, and thus he has not adequately developed this issue for appellate review. *See Muncey*, 2012-NMCA-120, ¶ 61 (declining to review a substantial evidence challenge to a punitive damages award where evidence supporting the verdict was not set out in the defendant's brief); *Headley*, 2005-NMCA-045, ¶ 15 ("We will not review unclear arguments, or guess at what [an appellant's] arguments might be."); *see also* Rule 12-318(A)(3)("A contention that a verdict, judgment, or finding of fact is not supported

by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing on the proposition[.]").

{39} Defendant next argues that the punitive damages awards were unconstitutionally excessive. Again, Defendant has failed to adequately develop this argument for our review. *See Headley*, 2005-NMCA-045, ¶ 15. Though Defendant provides the standard of review and recites the test we apply to determine whether a punitive damages award comports with due process, Defendant fails to explain how or why the awards in this case were unconstitutionally excessive. *See id*. Accordingly we decline to review Defendant's claim that the punitive damages awards were unconstitutionally effective.

**CONCLUSION**

{40} For the above reasons, we affirm the district court's judgment.

{41} **IT IS SO ORDERED.**

_____

**EMIL J. KIEHNE, Judge**

25

**WE CONCUR:**

_____

**M. MONICA ZAMORA, Judge**

_____

**STEPHEN G. FRENCH, Judge**